**ANDERSON COLUMBIA ENVIRONMENTAL, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 98–759C.

United States Court of Federal Claims.

April 15, 1999.

---

Jeffrey A. Lovitky, Washington, D.C., for plaintiff.

Deborah Y. Ho, Washington, D.C., with whom were Assistant Attorney General Frank W. Hunger, Director David M. Cohen, and Assistant Director James M. Kinsella, for defendant.

### Opinion and Order

WEINSTEIN, Judge.

This post-award bid protest case, brought pursuant to the court's recently expanded jurisdiction under 28 U.S.C. § 1491(b)(1) (1994 & Supp.1998), section 12 of the Administrative Dispute Resolution Act of 1996, Pub.L. No. 104–320, 110 Stat. 3870, 3874–75, is before the court on cross-motions for summary judgment on the administrative record.

On September 29, 1998, plaintiff moved for a preliminary injunction. During an October 1, 1998, hearing, the court denied plaintiff's motion as moot because defendant agreed to withdraw the notice to proceed and to stop performance on the contract.[1]

The awardee, Tanner Heavy Equipment Company, Inc. (Tanner), moved to intervene in this action. On February 19, 1999, the court denied Tanner's motion and permitted Tanner's participation in this action as *amicus curiae.*

Upon reviewing the administrative record (AR) and the parties' briefs, the court concludes that plaintiff's claims[2] do not merit relief. Accordingly, for the reasons discussed below, plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted.

### Facts

The relevant facts set forth below, which are taken from the AR, are not in dispute.

On August 17, 1998, the United States Army Corps of Engineers (Corps) issued solicitation number DACA63–98–B–0062, a sealed bid procurement, in CD–ROM format. AR at 14, 24. The solicitation called for an indefinite quantity requirements contract for road and drainage structure repair at the Joint Readiness Training Center at Fort Polk, Louisiana. AR at 13.

The solicitation specified a contract duration of 12 months with two 12–month option periods. AR at 13. The minimum guarantee was $20,000 for the base period and $10,000 for each option period, with a total amount not to exceed $3,000,000. AR at 13, 36.

The solicitation's bidding schedule contained 305 separate contract line items (CLINs) and provided an estimated quantity for each CLIN. AR at 26–31. The solicitation required "[b]idders [to] bid on all items," AR at 32, and contained the clause at Federal Acquisition Regulation (FAR) 52.214–18

---

1. Defendant subsequently requested a status conference to discuss the continued suspension of the contract, stating that certain work under the contract must be performed immediately. The court deemed defendant's agreement to suspend performance of the contract to be withdrawn and plaintiff's motion for a preliminary injunction to be reinstated. On March 25, 1999, in court, the court denied plaintiff's motion for a preliminary injunction.

2. Plaintiff raises nine claims for relief: (1) plaintiff's pricing of CLIN 0001 did not render its bid non-responsive; (2) plaintiff's failure to include a small business subcontracting plan and pre-award forms did not render its bid non-responsive; (3) plaintiff's substitution of an estimated quantity of 2,000 for 20,000 for CLIN 0239 did not render its bid non-responsive; (4) Tanner's bid was non-responsive because its pricing was materially unbalanced; (5) Tanner's bid was non-responsive because it exceeded the solicitation's maximum dollar limitations; (6) Tanner's bid was non-responsive because it failed to submit a bid bond in the manner required by the solicitation; (7) the solicitation should be canceled because the bid prices substantially exceeded the solicitation's maximum dollar limitation; (8) the solicitation should be canceled because the estimated quantities had no reasonable basis; and (9) the solicitation should be canceled due to ambiguity over pricing for CLIN 0001.

(Preparation of Bids—Construction),[3] which states, in pertinent part: "If the solicitation requires bidding on all items, failure to do so will disqualify the bid. If bidding on all items is not required, bidders should insert the words 'no bid' in the space provided for any item on which no price is submitted." AR at 45–46.

CLIN 0001, described as "Storm Water Pollution Prevention Plan Per Delivery Order," was the only line item without an estimated quantity. AR at 26. Instead, an asterisk was inserted in the estimated quantity column. In addition, CLIN 0001 contained seven asterisks (* * * * * * *) under the "unit price" and "estimated amount" columns. AR at 26. CLIN 0001 was the only one of the 305 CLINs containing asterisks in lieu of actual numbers or blanks. AR at 26–31. The solicitation stated that payment for CLIN 0001 "will be Lump Sum and negotiated for each delivery order." AR at 210.

Section 01410 of the solicitation addressed environmental protection. AR at 294–312. It required the awardee to "minimiz[e] environmental pollution and damage as the result of construction operations" and to submit a "Storm Water Pollution Prevention Plan," as described in CLIN 0001. AR at 294, 296. Paragraph 1.1.9 of this section, entitled "Payment," stated: "No separate payment will be made for work covered under this section; all costs associated with this section shall be included in the contract unit and/or lump sum prices in the Bidding Schedule." AR at 296.

The solicitation contained other provisions relevant to this action. Section 00100, paragraph 42, required that all "large business" bidders submit a small business subcontracting plan, due at bid opening. AR at 49. Section 00100, paragraph 43, required that all bidders submit pre-award survey forms, due at bid opening. AR at 49. Finally, the solicitation contained the clause at FAR 52.214–19, which required materially unbalanced bids to be rejected as non-responsive. AR at 46.

The Corps received only two bids, from plaintiff and Tanner, prior to the September 16, 1998, bid opening. AR at 921–90. Plaintiff bid $10,108,678.16; Tanner bid $10,423,-351.95. AR at 928, 965. The government's cost estimate (which was not revealed to offerors until after bid opening) was $11,613,-838.46. AR at 908.

After reviewing each bid for responsiveness, the contracting officer (CO) concluded that plaintiff failed to comply with the solicitation in three major respects. AR at 990–92. First, plaintiff improperly inserted a price for CLIN 0001. AR at 991, 1002. Second, plaintiff altered CLIN 0239, replacing the estimated quantity of 20,000 with 2,000, resulting in an understatement of plaintiff's price by about $40,000. AR at 927, 990, 1002. Finally, plaintiff failed to submit the required small business subcontracting plan and pre-award survey information. AR at 990, 1002. Accordingly, in a letter dated September 23, 1998, the CO rejected plaintiffs bid as non-responsive. AR at 1002. The Corps awarded Tanner the contract on the same day. AR at 993.

On September 24, 1998, the Corps issued to Tanner Delivery Order No. 0001 in the amount of $1,500,573.22, consisting of orders under ten separate CLINs. AR at 1007–09. The quantities ordered under four of these CLINs substantially exceeded the solicitation's estimates. AR at 1009.

### Summary Judgment

Summary judgment is appropriate when the court finds both that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c) of the Rules of the United States Court of Federal Claims (RCFC); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Motions for judgment on the administrative record are evaluated under the same standards as motions for summary judgment pursuant to RCFC 56(a). See RCFC 56. 1(a). Because there are no disputed issues of material fact, the court must determine whether either party is entitled to judgment as a matter of law. *See* RCFC 56.

3. The FAR is codified at title 48 of the Code of Federal Regulations. Section references are to the provisions of title 48 effective when the solicitation was issued on August 17, 1998.

Summary judgment is not a disfavored means of resolving disputes; on the contrary, it is an "integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1); *see also Avia Group Int'l, Inc. v. L.A. Gear California, Inc.,* 853 F.2d 1557, 1560 (Fed.Cir.1988); *Sweats Fashions, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1562 (Fed.Cir.1987). The fact that both parties have moved for summary judgment, however, does not relieve the court of its responsibility to determine the appropriateness of summary disposition. *See Prineville Sawmill Co. v. United States,* 859 F.2d 905, 911 (Fed.Cir.1988).

### *Post–Award Bid Protests*

■ In post-award bid protests brought pursuant to revisions to the Tucker Act jurisdiction,[4] courts must apply the standard of review for agency action established by the Administrative Procedure Act, 5 U.S.C. § 706 (1994). *See* 28 U.S.C. § 1491(b)(4). An agency procurement decision will be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The scope of review is confined to the administrative record, *i.e.,* to the record before the decision maker when the final award decision was made. *See Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). The court "may award any relief that [it] considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs." 28 U.S.C. § 1491(b)(2).

■ Absent evidence of actual irregularity, the court presumes the regularity of government action. *See Kalvar Corp. v. United States,* 211 Ct.Cl. 192, 543 F.2d 1298, 1301–02

(1976) (holding that government officials are presumed to act in good faith). To rebut this presumption, a plaintiff must present "well-nigh irrefragable proof" that the government acted in bad faith. *Torncello v. United States,* 231 Ct.Cl. 20, 681 F.2d 756, 771 (1982).

■ In sum, a court may set aside an agency's action only when it has no rational basis, *see M. Steinthal & Co. v. Seamans,* 455 F.2d 1289, 1306 (D.C.Cir.1971), *i.e.,* when the decision is "totally lacking in reason." *Keco Indus., Inc. v. United States,* 203 Ct.Cl. 566, 492 F.2d 1200, 1206 (1974). If the agency's decision is reasonable, the court will not disturb it. *See, e.g., Grumman Data Sys. Corp. v. Dalton,* 88 F.3d 990, 995–96 (Fed. Cir.1996).

■ In addition, to receive injunctive relief, plaintiff must show, not only that the agency's decision is unreasonable, but also: 1) that failure to enjoin the procurement will cause irreparable harm; 2) that such harm outweighs any potential harm to third parties; and 3) that injunctive relief is in the public interest. *See FMC Corp. v. United States,* 3 F.3d 424, 427 (Fed.Cir.1993).

■ Not every error requires rejection of the agency's action. *See SMS Data Prods. Group, Inc. v. United States,* 900 F.2d 1553, 1557 (Fed.Cir.1990); *Excavation Constr., Inc. v. United States,* 204 Ct.Cl. 299, 494 F.2d 1289, 1293 (1974). The court will not overturn a contract award based on *de minimis* errors made during the procurement process. *See Grumman Data Sys. Corp. v. Widnall,* 15 F.3d 1044, 1048 (Fed.Cir.1994) ("overturning awards on *de minimis* errors wastes resources and time, and is needlessly disruptive of procurement activities and governmental programs and operations") (quoting *Andersen Consulting v. United States,* 959 F.2d 929, 932 (Fed.Cir.1992)).

4. 28 U.S.C. 1491(b)(I) (1994 & Supp.1998) now provides:

 Both the Unites [sic] States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract

or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.

■ A protester must show, not only an error in the procurement process, but also that the error was prejudicial. *See Data Gen. Corp. v. Johnson,* 78 F.3d 1556, 1562 (Fed.Cir.1996); *Central Ark. Maintenance, Inc. v. United States,* 68 F.3d 1338, 1342 (Fed.Cir.1995). To establish prejudice, the protester must show that, but for the procurement error, there was a "substantial chance that [it] would receive an award." *Statistica, Inc. v. Christopher,* 102 F.3d 1577, 1581 (Fed.Cir.1996) (quoting *CACI, Inc. v. United States,* 719 F.2d 1567, 1574–75 (Fed. Cir.1983)).

### *Discussion*

#### 1. *CLIN 0001*

Plaintiff claims that its bid should not have been rejected as non-responsive merely because it inserted a price for CLIN 0001. Rather, plaintiff argues that *Tanner's* bid should have been rejected because Tanner *did not* insert a price for CLIN 0001. *See* FAR § 14.404–2(a) (bids failing to conform to the solicitation's "essential requirements" must be rejected as non-responsive).

■ If the parties dispute a solicitation's meaning, the court employs the following analysis. First, the court considers the solicitation's plain language. *See Northrop Grumman Corp. v. Goldin,* 136 F.3d 1479, 1483 (Fed.Cir.1998); *Gould, Inc. v. United States,* 935 F.2d 1271, 1274 (Fed.Cir.1991). The court must give reasonable meaning to all terms, and not render any portion meaningless. *Fortec Constructors v. United States,* 760 F.2d 1288, 1292 (Fed.Cir.1985); *Thanet Corp. v. United States,* 219 Ct.Cl. 75, 591 F.2d 629, 633 (1979).

Next, the court determines whether the language, given its ordinary meaning, creates an ambiguity. *See McAbee Constr. v. United States,* 97 F.3d 1431, 1434–35 (Fed.Cir.1996). A term is ambiguous "if it is susceptible of two different and reasonable interpretations." *Community Heating & Plumbing Co. v. Kelso,* 987 F.2d 1575, 1579 (Fed.Cir. 1993) (citations omitted). If a term is unambiguous, the court cannot assign it another meaning, no matter how reasonable it may appear. *Triax Pacific, Inc. v. West,* 130 F.3d 1469, 1473 (Fed.Cir.1997) (citing *R.B. Wright*

*Constr. Co. v. United States,* 919 F.2d 1569, 1572–73 (Fed.Cir.1990)).

■ Interpreting the solicitation as a whole, the court finds that it unambiguously proscribed bidding on CLIN 0001. Plaintiff correctly notes that the solicitation required bidding on all items. AR at 32, 45–46. Plaintiff also cites the description of CLIN 0001, which states that "[p]ayment for this Bid Item will be Lump Sum and negotiated for each delivery order." AR at 210. Plaintiff interprets this as providing that storm water pollution protection costs would be negotiated for each delivery order and then subtracted from the amount bid for CLIN 0001.

These provisions, however, must be read in conjunction with other portions of the solicitation, particularly the bidding schedule. *See Gould,* 935 F.2d at 1274 ("an interpretation which gives a reasonable meaning to all of its parts will be preferred to one which leaves a portion of it useless, inexplicable, void, insignificant, meaningless, superfluous, or achieves a weird or whimsical result"). Plaintiff's interpretation is contrary to the plain meaning of the asterisks inserted at CLIN 0001, which clearly was to prevent bids for this line item.

Plaintiff's only answer to this argument is the conclusory statement that the "asterisks do not in any manner indicate that a bid should not be submitted for this line item." This assertion is baffling in light of the fact that the asterisks physically preclude an offeror from inserting a price. Indeed, plaintiff was able to insert a price for CLIN 0001 only because it did not use the government-furnished bidding schedule form. Its own computer-generated form deleted the asterisks at CLIN 0001. AR at 923.

Section 01410 of the solicitation, which addressed, inter alia, storm water pollution prevention, bolsters this conclusion. Paragraph 1.1.9 of this section, entitled "Payment," stated: "No separate payment will be made for work covered under this section; all costs associated with this section shall be included in the contract unit and/or lump sum prices in the Bidding Schedule." AR at 296. Section 01410 must be read in light of Section

01020, which states that "[p]ayment for [CLIN 0001] will be Lump Sum and negotiated for each delivery order." AR at 210. Together, these provisions indicate that payment for CLIN 0001 was to be negotiated "per delivery order," AR at 26, and not included in the bidding schedule.

█ Even accepting plaintiff's argument, the placement of asterisks at CLIN 0001 rendered the solicitation patently ambiguous. A patent ambiguity exists when the ambiguity is glaring or when there is an obvious discrepancy in contract terms. *See Community Heating*, 987 F.2d at 1579. Under plaintiff's argument there is an obvious discrepancy in the bidding schedule—CLIN 0001 is the *only* line item with asterisks substituted in the "unit price" and "estimated amount" columns.

█ A patent ambiguity imposes the duty of inquiry on the bidder. *See id.* If the bidder does not clarify the patent ambiguity, it forfeits the right to rely upon its unilateral interpretation of the solicitation. *See Dalton v. Cessna Aircraft Co.*, 98 F.3d 1298, 1306 (Fed.Cir.1996). Nothing in the record in this case indicates that plaintiff satisfied its duty of inquiry. Therefore, it may not rely on its unilateral interpretation.

Because the solicitation precluded bidding on CLIN 0001, the Corps properly rejected plaintiff's bid as non-responsive. Conversely, Tanner's failure to bid on CLIN 0001 did not render its bid non-responsive. Accordingly, plaintiff's challenges on these grounds fail.

### 2. *Unbalanced Bidding*

█ Plaintiff claims that Tanner's bid was non-responsive because it was materially unbalanced.[5] *See* FAR 52.214–19. A materially unbalanced bid is one "based on prices significantly less than cost for some work and prices which are significantly overstated in relation to cost for other work, and ... there is a reasonable doubt that the bid will result in the lowest overall cost." *Id.* In requirements contract solicitations, a *mathematical-*

*ly* unbalanced bid contains high prices for some line items and low prices for others. However, the unbalancing is not *material* unless the solicitation's estimates are inaccurate, "since the unbalanced bid will only become less advantageous than it appears if the Government ultimately requires a greater quantity of the overpriced items and/or a lesser quantity of the underpriced items." *Duramed Homecare*, B–245766, Jan. 30, 1992, 92–1 CPD ¶ 193, 196.

█ Tanner's bid varied from the government's estimate by 50 percent in 22 percent ($^{66}/_{305}$) of all CLINs bid. Additionally, of the eight CLINs in which Tanner bid more than $190,000, four exceeded the government's estimate by more than 50 percent.

Plaintiff claims that Delivery Order No. 0001 demonstrated material unbalancing, because "[e]normous discrepancies exist between the solicitation estimates and the amounts actually ordered." For example, the quantities for individual CLINs ordered by Delivery Order No. 0001 exceeded the solicitation's estimate by over 1,700 percent for CLIN 0205 and 1,400 percent for CLIN 0293.

The court concludes that Tanner's bid is not materially unbalanced. The standard for material unbalancing is that there be a "reasonable doubt that the acceptance of a mathematically unbalanced bid will result in the lowest overall cost to the government." *Nomura Enters., Inc.*, B–271215, May 24, 1996, 96–1 CPD ¶ 253, 258. Because the court finds plaintiff's bid to be non-responsive, *see* Part 1, *supra*, Tanner's is the only responsive bid. Thus, there is no reasonable doubt that Tanner's bid will provide the lowest overall cost because it was the only bid responsive to the solicitation. *See Gyro Sys. Co.*, B–216447, Sept. 27, 1984, 84–2 CPD ¶ 364 (denying protest on the ground that, even if the bid were mathematically unbalanced, it would still be lowest). Therefore, Tanner's bid is not materially unbalanced.

---

5. While the FAR states that a materially unbalanced bid "may" be rejected, GAO precedent holds that such a bid *must* be rejected. *See Northwest Cleaning Serv.*, B–234780, May 31,

1989, 89–1 CPD ¶ 523. Although GAO precedent is not binding on this court, it is persuasive in appropriate cases. *See Honeywell, Inc. v. United States*, 870 F.2d 644, 647–648 (Fed.Cir.1989).

Even *if* plaintiff's bid were responsive, Tanner's bid would not be materially unbalanced. Tanner's bid is clearly *mathematically* unbalanced. A mathematically unbalanced bid is one based on "prices significantly less than cost for some work and prices which are significantly overstated in relation to cost for other work." FAR 52.214–19. Whether a bid is mathematically unbalanced is determined by comparing the bidder's prices to the government's estimates. *See All Star Maintenance, Inc.,* B–231618, Aug. 25, 1988, 88–2 CPD ¶ 181. Because Tanner's bid varies from the government's estimate by more than 50 percent in 22 percent of all items bid, it is mathematically unbalanced.

Plaintiff argues that Tanner's bid is also materially unbalanced because the government's quantity estimates are inaccurate. Plaintiff points to Delivery Order No. 0001, the only order issued prior to the Corps' suspension of performance of the contract. The quantities ordered by Delivery Order No. 0001 exceeded the government's estimate by over 1,700 percent for CLIN 0205, 1,400 percent for CLIN 0293, 700 percent for CLIN 0180, and over 400 percent for CLIN's 0233 and 0236.

The following table lists the estimated quantity, the quantity ordered, Tanner's bid per unit, the government's estimated price per unit, the government's total estimated cost, and Tanner's total bid, for all CLINs ordered by Delivery Order No. 0001 (totals are rounded to the nearest dollar):

| | I | II | III | IV | V | VI |
| | | | | | Gov. Cost | Tanner |
| | Gov. | Quantity | Tanner | Gov. | For Quan. | Bid For |
| | Est. | Actually | Bid Per | Est. Per | Actually | Quan. |
| CLIN | Quan. | Ordered | Unit | Unit | Ordered (II × IV) | Ordered (II × III) |
| 0035 | 100 | 6 | $ 2,223.90 | $ 1,000 | $ 6,000 | $ 13,343 |
| 0180 | 10000 | 70002 | $ 1.24 | $ 2.30 | $161,005 | $ 86,802 |
| 0205 | 70 | 1200 | $ 143.52 | $ 127.89 | $153,468 | $172,224 |
| 0233 | 20000 | 85000 | $ 6.30 | $ 7 | $595,000 | $535,500 |
| 0236 | 20000 | 85000 | $ 0.36 | $ 3.50 | $297,500 | $ 30,600 |
| 0238 | 20000 | 9504 | $ 3.68 | $ 6 | $ 57,024 | $ 34,975 |
| 0244 | 10 | 10.5 | $40,463.08 | $35,000 | $367,500 | $424,862 |
| 0247 | 5000 | 6019 | $ 7.32 | $ 7 | $ 42,133 | $ 44,059 |
| 0293 | 5 | 70 | $ 2,048 | $ 1,420 | $ 99,400 | $143,360 |

Thus, for several of the CLINs ordered in Delivery Order No. 0001 cited by plaintiff (0180, 0233, 0236, 0238), Tanner actually *underbid* the government's estimate. For CLINs 0205, 0244, and 0247, Tanner's bid was only slightly above the government's estimate. However, in CLINs 0035 and 0293 Tanner's bid substantially exceeded the government's estimate, by 122% and 44%, respectively.

Most germane to the issue of material unbalancing, however, are the CLINs exceeding the government's estimated quantity: CLINs 0180, 0205, 0233, 0236, 0244, 0247, and 0293. For CLINs 0205, 0244, 0247, and 0293, the excess quantity ordered resulted in an additional cost to the government of $17,-661.90, $2,731.54, $326.08, and $40,820, respectively, for a total of $61,539.52.[6] Howev-

6. For CLIN 0205, Tanner's bid exceeded the government's estimate by $15.63 ($143.52—$127.89). The excess quantity ordered was 1130 (1200—70). This resulted in a total excess cost of $17,661.90 ($15.63 × 1130). For CLIN 0244, Tanner's bid exceeded the government's estimate by $5,463.08 ($40,463.08—$35,000). The excess quantity ordered was 0.5 (10.5—10). This resulted in a total excess cost of $2,731.54 ($5,463.08 × 0.5). For CLIN 0247, Tanner's bid exceeded the government's estimate by $0.32 ($7.32—$7). The excess quantity ordered was 1019 (6019—5000). This resulted in a total excess cost of $326.08 ($0.32 × 1019). For CLIN 0293, Tan-

er, for CLINs 0180, 0233, and 0236, where Tanner underbid the government's estimate, the excess quantity ordered resulted in a *savings* to the government of $63,602.12, $45,500 and $204,100, respectively, for a total of $313,202.12.[7]

In sum, netting the prices offered by Tanner at the quantities ordered by Delivery Order No. 0001 resulted in a $251,662.60 ($313,202.12—$61,539.52) net *savings* to the government. Accordingly, Tanner's bid cannot be materially unbalanced. *See* FAR 52.214–19(d) (for a bid to be materially unbalanced, there must be "a reasonable doubt that the bid will result in the lowest overall cost"). Furthermore, plaintiff offers no evidence to show that the rest of the government's estimated quantities are inaccurate. Absent evidence that the government would or could order a greater quantity of overpriced items, plaintiff has not satisfied its burden of proving that Tanner's bid was materially unbalanced.

Finally, plaintiff's own bid is mathematically unbalanced. At least 30% (more than Tanner's 22%) of plaintiff's CLINs on the bidding schedule varied from the government's estimate by more than 50%. It is therefore reasonable to assume that Tanner's bid would not be materially unbalanced even with more accurate estimates.

### 3. *Maximum Dollar Limitation*

Plaintiff argues that Tanner's bid of $10,423,351.95 was non-responsive because it exceeded the solicitation's maximum dollar limitation of $3,000,000. This argument is flawed because it misinterprets the solicitation's fundamental nature as a requirements contract.

The solicitation expressly provided that it was for a requirements contract, AR at 100, and that "the quantities of supplies or services specified in the [Bidding] Schedule *are estimates only and are not purchased by this contract* .... Delivery or performance shall be made only as authorized by orders issued in accordance with the Ordering clause." AR at 100–01 (emphasis added). The ordering clause specified that "[a]ny supplies and services to be furnished under th[e] contract shall be ordered by issuance of delivery orders." AR at 100.

Accordingly, the bidding schedule is irrelevant to the issue of whether Tanner exceeded the solicitation's maximum dollar limitation, because not all of these items were actually purchased under the contract. The significance of the bidding schedule is that it was the method used by the Corps in determining the lowest bid. AR at 46, 100. The contract itself, however, did not provide that the Corps would order all items in the bidding schedule. AR at 100. In fact, the Corps awarded the contract to Tanner based upon the guaranteed minimum amount of $20,000, not based upon the bidding schedule. AR at 959. Thus, the contract award did not exceed the solicitation's estimated maximum of $3,000,000.

Plaintiff also argues that Delivery Order No. 0001 unlawfully exceeded the base period's estimated maximum price of $1,000,000.[8] *See* AR at 995; *see also* 10 U.S.C. 2304b(f)

---

ner's bid exceeded the government's estimate by $628 ($2,048—$1,420). The excess quantity ordered was 65 (70—5). This resulted in a total excess cost of $40,820 ($628 × 65).

7. For CLIN 0180, Tanner underbid the government's estimate by $1.06 ($2.30—$1.24). The excess quantity ordered was 60,002 (70,002—10,000). This resulted in a savings of $63,602.12 ($1.06 × 60,002). For CLIN 0233, Tanner underbid the government's estimate by $0.70 ($7—$6.30). The excess quantity ordered was 65,000 (85,000—20,000). This resulted in a savings of $45,500 ($0.70 × 65,000). For CLIN 0236, Tanner underbid the government's estimate by $3.14 ($3.50—$0.36). The excess quantity ordered was 65,000 (85,000—20,000). This resulted in a savings of $204,100 ($3.14 × 65,000).

8. Plaintiff also claims that Delivery Order No. 0001 "exceeded the amount authorized by the solicitation for the issuance of a single delivery order [of $1,000,000]." This is factually incorrect. The relevant portion of the AR reads: "Maximum order. The Contractor is not obligated to honor ... [a]ny order for a combination of items in excess of $1,000,000." AR at 100. Thus, it is clear that a single delivery order may exceed $1,000,000, with the only limitation being that the contractor may elect not to honor such an order. Nothing in the solicitation, however, precluded the contractor from honoring an order in excess of $1,000,000, if the contractor chose to.

("A task order may not increase the scope, period, or maximum value of the ... contract under which the order is issued."). However, nothing in the solicitation imposed a monetary cap on the base period. The relevant portion of the solicitation reads: "The estimated maximum price for the base plus all options is $3,000,000. The minimum guarantee for the base period is $20,000 and $10,000 for each option period." AR at 36.

The pre-solicitation notice, AR at 13, and the award notice, AR at 995, arguably cap the contract's base period at $1,000,000. Assuming *arguendo* that pre-solicitation and award notices bind the government, this sum is an estimate, not a maximum. Because the solicitation consisted of an indefinite quantities contract, the government does not know the exact amounts it will need, and therefore must rely on estimates in considering bids. As such, an estimated amount cannot impose an absolute cap on delivery orders. *See Prineville Sawmill*, 859 F.2d at 913–14; *Caffall Bros. Forest Prods., Inc. v. United States*, 230 Ct.Cl. 517, 678 F.2d 1071, 1077 (1982).

### Conclusion

Because the court finds plaintiff's bid to be non-responsive based on its bid for CLIN 0001, it is unnecessary to discuss whether (1) plaintiff's failure to include a small business subcontracting plan and pre-award forms and (2) plaintiff's inadvertent substitution of an estimated quantity of 2,000 for 20,000 under CLIN 0239 also rendered plaintiff's bid non-responsive. In addition, plaintiff's claim that Tanner failed to properly submit a bid bond finds no support in the AR and thus must be rejected.

Plaintiff's motion for summary judgment is denied and defendant's cross-motion for summary judgment is granted. The Clerk of the Court shall enter judgment for defendant.