**AMERISOURCEBERGEN DRUG CORP., Plaintiff,**

v.

**UNITED STATES of America, Defendant,**

and

**McKesson Corp., Defendant–Intervenor.**

No. 04–0063C.

United States Court of Federal Claims.

Filed under seal March 25, 2004.

Reissued March 30, 2004.[1]

1. This opinion was originally filed under seal on March 25, 2004, pursuant to this Court's January 23, 2004 protective order. The parties were given an opportunity to advise the Court regarding any privileged and/or protected portions of this opinion that should be redacted prior to publication. Both plaintiff and defendant requested certain redactions. The Court agreed and redacted the materials requested by the parties. Redactions are indicated by asterisks in brackets ( [* * *] ).

Michael A. Hordell, Pepper Hamilton, LLP, Washington, D.C., for plaintiff. Charles H. Carpenter, Laura L. Hoffman, Jennifer W. Persico, Pepper Hamilton, LLP, of counsel.

Shalom Brilliant, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., with whom was David Feniger, Commercial Litigation Branch, Civil Division, Peter D. Keisler, Assistant Attorney General and David M. Cohen, Director, for defendant. Maura Brown and Melbourne Noel, Office of General Counsel, Department of Veterans Affairs, of counsel.

Thomas P. Barletta, Steptoe & Johnson, Washington, D.C., for defendant-intervenor. Danny Sauls, Paul I. Lieberman, Paul R. Hurst, Michael C. Drew, Steptoe & Johnson, of counsel.

## OPINION

MARGOLIS, Senior Judge.

This post-award bid protest is before the Court on the parties' cross-motions for summary judgment on the administrative record. The parties completed briefing on March 5, 2004, and oral argument on the motions was held on March 11, 2004. Plaintiff, AmerisourceBergen Drug Corporation ("ABC") challenges the United States', acting through the Department of Veterans Affairs, ("VA" or "defendant"), award of a contract to McKesson Corporation ("McKesson" or "defendant-intervenor"), for the distribution of pharmaceutical products. Plaintiff challenges the VA's award, contending that the price proposal on which the VA's award is based is prohibited by the solicitation. Plaintiff requests that this Court issue a permanent injunction terminating the award to McKesson and directing the VA to make award of the contract to ABC for all the regions involved, or, at a minimum, for Regions 1–13. In the alternative, plaintiff requests that this Court issue a permanent injunction ordering the VA to amend the solicitation to adequately reflect the VA's needs, and to reopen competition to all offerors within the competitive range. After careful consideration of the parties' briefs and oral arguments, this Court **DENIES** plaintiff's motion and **GRANTS** defendant's

and defendant-intervenor's motions for summary judgment on the administrative record.

### FACTS

*I.  The Solicitation*

On June 20, 2003, the United States Department of Veterans Affairs issued Solicitation No. 797–PV–03–002 ("Solicitation" or "RFP") for the procurement of pharmaceutical product distribution. The solicitation provided for a contract with a base period of two years, with three two-year renewable options. The government estimated the value of the contract to be $24 billion over the entire eight-year period. The VA issued the solicitation in connection with the Veterans Affairs National Acquisition Center's ("NAC") Pharmaceutical Prime Vendor ("PPV") program. The solicitation contemplated award of one or more requirements contracts under which a PPV contractor distributes pharmaceutical products to the VA and other designated federal agencies. The PPV contractor purchases pharmaceutical products from various government supply contracts and is responsible for delivering the products to the participating agencies whenever they place an order with the PPV contractor. The solicitation listed 665 government facilities that would utilize the contract's services. These facilities were divided into 14 regions. Regions 1–13 were divided by the geographic location of the customer base. Region 14 consisted of: (1) the Consolidated Mail Outpatient Pharmacy ("CMOP") facilities: (2) the HHS, Service Supply Center facilities; and (3) the NAC accounts. These facilities service a customer base that spans several regions.

Under the solicitation, proposals were evaluated with respect to: (1) Price, (2) Past/Current Performance, (3) Technical Approach, and (4) Small Disadvantaged Business ("SDB") participation. Price was the most important evaluation factor, and ac-counted for [* * *] of the evaluation. Past/Current Performance and Technical Approach were the next most important evaluation factors, and each accounted for [* * *] of the evaluation. SDB Participation was the least important evaluation factor, and accounted for [* * *] of the evaluation.[2] The RFP indicated that award would be made to the offeror whose offer represented the best value to the government, considering both price and non-price factors. With respect to non-price factors,[3] the VA scored the proposals using ratings of Exceptional, Highly Acceptable, Acceptable, Marginally Acceptable, and Unacceptable.

The solicitation required offerors to submit written proposals consisting of a Business proposal ("BP") and a Technical proposal ("TP"). The BP was to include information regarding price, current and past performance, and SDB participation. The TP was to include an implementation plan (in the form of a chart demonstrating the offeror's implementation work schedule); a training schedule (in the form of a chart illustrating a training timeline); and a distribution center map or chart. The solicitation informed offerors that the VA did not want a lengthy written explanation on how the offeror would perform the contract. The solicitation provided for a two-hour oral presentation that was "intended to provide the offeror the opportunity to discuss, describe, highlight and expand upon the information submitted as part of their written proposal and the requirements of [the] solicitation." Administrative Record ("AR") 0184.

The RFP was structured as a commercial-item acquisition under Federal Acquisition Regulation ("FAR") Part 12 and required offerors to submit pricing in terms of negative distribution fees. The pharmaceutical prices are set through federal contracts between the government and the manufacturer. Negative distribution fees are calculated by subtracting the discount offered by the PPV

---

**2.** Although the RFP did not provide the specific percentages attributed to each factor, it specifically indicated that the Past/Current Performance and Technical Approach factors were of equal importance and that the SDB factor was significantly less important than any other factor. Price was of equal importance to the combina-tion of Past/Current Performance and Technical Approach.

**3.** The non-price factors included the technical approach, past and current performance, and SDB participation.

contractor from the actual cost of the products. The solicitation indicated that the VA would award the highest rating to the offeror providing the highest negative distribution fee.[4]

The solicitation explained that offerors were permitted to submit offers on "one, more than one, or each and every one of the identified regions." AR 0131. The government made clear, however, that it would not accept any offers submitted "only as an 'ALL OR NONE' offer." Id. The solicitation also allowed offerors to submit more than one pricing proposal. If an offeror chose to submit an additional pricing proposal, which the solicitation referred to as an alternate offer, an offeror was required to clearly identify the offer as an alternate offer. AR 0260–73. Further, on *every* page of the fee schedule, the solicitation informed offerors that "[i]n order to be eligible for award, any Offeror submitting alternate offers (which are multi-region offers) also must submit offers for each individual region offered in the alternate offer." Id. In addition, the RFP contained FAR 52.212–1(h), which permits the government to "accept any item, or group of items of an offer, unless the offeror qualifies the offer by specific limitations." AR 0177. Consequently, the solicitation allowed the VA to award the contract on a regional or multiple regional basis, depending on which proposal offered the best value to the government.

The solicitation set aside three of the 13 geographic regions (6, 7 and 8) for the participation of small business concerns. The solicitation noted, however, that the VA reserved the right to dissolve the set-asides under two circumstances: (1) failure to receive at least two offers from qualified small business concerns, or (2) a determination by the contracting officer that no offer submitted by a small business concern was acceptable. In the event of dissolution, the RFP provided that the VA would consider offers for the regions on a "full and open unrestricted basis from all responsible business concerns (regardless of size)." AR 0257. Offer-

ors, therefore, were encouraged to submit offers for the set-aside regions. AR 0139–40. The solicitation noted that because the VA intended to award the contract without discussion, offerors should submit their best terms in their initial offers.

## II. *The Proposals*

In response to the solicitation, the VA received eight offers. ABC submitted individual price proposals for all 14 regions, and [* * *]. McKesson submitted three different proposals. The cover sheet to McKesson's first proposal, entitled "Proposal One—All Regions," stated the following:

> The following fee schedule pricing, Proposal One, is a comprehensive proposal for all the VA's pharmaceutical prime vendor business. It is only offered for all 14 Veterans Affairs Regions as a whole. It is understood that regions 6, 7, and 8 are set asides and may not factor into the overall volume.

AR 0780. The cover sheet to McKesson's second proposal—"Proposal Two—Region 14" stated that the proposal was a "comprehensive proposal for the VA's Pharmaceutical Prime Vendor business in region 14." AR 0796. McKesson's "Proposal Three—Regions 1 through 13" stated that the proposal was a "comprehensive proposal for the VA's Pharmaceutical Prime Vendor Business for all regions, excluding Region 14." AR 0799.

After receiving only one offer for Region 7, the VA issued Amendment No. 7 to the solicitation and withdrew the small business set-aside for Region 7 in September 2003. Thereafter, in October 2003, the VA wrote a letter to McKesson, seeking clarification of the statement on the cover page of McKesson's Proposal One. AR 0762. Specifically, in light of the dissolution of the set-aside for Region 7, the VA requested that McKesson clarify the meaning of: "It is understood that regions 6, 7 & 8 are set asides and may not factor into the overall volume." Id. In response, McKesson explained that the intent of the language "was to indicate that [the] distribution fees offered applied to all regions

---

4. Although the VA evaluated offers by adding the total price for all option years to the total price for the base period, the VA indicated that its

evaluation of the options did not obligate the VA to exercise them.

with the exception of 6, 7 and 8 as they were designated as set asides." AR 0763. Because the VA dissolved the set-aside for Region 7, McKesson indicated that its proposal covered all regions except 6 and 8—the remaining small business set-asides. McKesson also explained that in the event that the VA dissolved the set-aside for regions 6 and 8, Proposal One would apply to those regions as well. In November and December of 2003, the VA issued amendments 8 and 9 to the solicitation, removing the set-asides for regions 6 and 8, respectively.

### III. Award

On December 31, 2003, the VA awarded all 14 regions under the contract to McKesson, based on Proposal One, finding that "McKesson offered the best overall proposal in terms of combined strengths in price, past/current performance, technical approach and SDB participation." AR 2179. In the Summary of Award, the SSA explained that although McKesson and ABC received the [* * *], McKesson received a [* * *] and McKesson's price offer was "the most beneficial to the government." Id.

The VA's price analysis included the evaluation of the offerors' proposed negative distribution fees (savings to the government), for the base performance period and the three option periods for each region. The VA determined that McKesson's Proposal One—All Regions, offered a total savings to the government of $1,227,416,460. AR 2167. By comparison, the VA determined that ABC's stand-alone offers for Regions 1 through 14 offered a total savings to the government of [* * *]. Id. Accordingly, the VA determined that McKesson's Proposal One was the "best price proposal" because it offered more overall savings than ABC's stand-alone proposal by [* * *]. Id. at 2167–68.

On January 2, 2004, ABC sent a letter to the Contracting Officer ("CO"), requesting a post-award debriefing. ABC also sent an e-mail to the CO, on January 5, 2004, asking the CO to include the different weights accorded the evaluation factors and sub-factors in the debriefing. In response to the letter and e-mail, the CO sent ABC a debriefing on January 6, 2004. The debriefing discussed each evaluation factor listed in the solicitation, explaining the rationale behind the VA's award to McKesson. The debriefing highlighted the weaknesses that prevented ABC from receiving a higher score under certain sub-factors of the Technical Approach factor. Similarly, it discussed the weaknesses that prevented ABC from receiving a higher score under the SDB Participation factor. With regard to price, the letter explained that "price evaluation was based on the overall cost to the Government after considering possible combinations of individual region offers and alternate offers for multiple region proposals." AR 2314. It stated that based on the evaluation, McKesson's offered overall savings were better than ABC's offered overall savings by [* * *], which were "significant amounts to the Government." Id.

On January 21, 2004, ABC filed suit, seeking both a temporary restraining order ("TRO") and a preliminary injunction seeking to enjoin the VA from awarding the contract to McKesson. On February 9, 2004, the parties reached an agreement that precluded the need for preliminary injunctive relief. Consent Order at 1. Pursuant to this agreement, the Court issued a consent order on February 11, 2004, requiring: (1) the Court to render a decision on the merits of the underlying action by or before March 25, 2004 and (2) the defendant-intervenor to refrain from purchasing any and all inventory items for the purpose of performing the PPV contract until March 25, 2004. The Consent Order further stated that performance on the new contract would begin forty-five (45) days after the Court renders its decision on the merits.

On February 9, 2004, plaintiff filed an amended complaint, setting forth four counts. Count I alleges that the VA's award of an "all or none" contract to McKesson was contrary to the RFP, improper, arbitrary and capricious, and therefore, the entire contract should be awarded to ABC. Count II alleges that, if a split award is in the best interest of the VA, the VA should award Regions 1–13 to plaintiff. Count III alleges that VA's evaluation of ABC's proposal was improper, arbitrary and capricious. Count IV alleges that

the VA's best value analysis was flawed because it was based on defective pricing criteria.

On February 20, 2004, all three parties filed motions for judgment on the administrative record. In plaintiff's motion, it claims that the VA accepted McKesson's Proposal One in violation of terms of the solicitation.[5] Specifically, plaintiff contends that McKesson's Proposal One was an "all or none" offer that was prohibited by the solicitation. Furthermore, because the solicitation required offerors to submit individual offers for each region listed in their multi-region proposals, plaintiff argues that McKesson failed to present individual bids for each region listed in its Proposal One.[6]

## DISCUSSION

### I. Standard for Entering Judgment on the Administrative Record

This action is before the Court on cross-motions for summary judgment upon the administrative record pursuant to R. CT. FED. CL. 56.1 ("RCFC"). Although presented as a motion for summary judgment, a motion for judgment on the administrative record does not inquire whether genuine issues of material fact exist so as to necessitate a trial. See Colorado Constr. Corp. v. United States, 57 Fed.Cl. 648, 650 (2003) (citing Tech Sys., Inc. v. United States, 50 Fed.Cl. 216, 222 (2001)). Rather, the Court must determine whether, given all the facts, both disputed and undisputed, a protestor has met its burden of proof. Id. (citing CCL Serv. Corp. v. United States, 48 Fed.Cl. 113, 119 (2000)).

### II. Standard for Post–Award Procurement Challenges

■ The standard of review governing post-award bid protests is whether the agency's decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); Cubic Applications, Inc. v. United States, 37 Fed.Cl. 339, 342 (1997).[7] Under this standard, a protestor must demonstrate by a preponderance of the evidence either: (1) that the agency's decision lacked a reasonable and rational basis or (2) that the procurement procedures involved a clear violation of applicable statutes or regulations. Mark Dunning Indus., Inc. v. United States, 58 Fed.Cl. 216, 220 (2003) (quoting Ellsworth Assocs., Inc. v. United States, 45 Fed.Cl. 388, 392 (1999)).

■ When a challenge is brought on the first ground, the Court's inquiry is limited and asks only whether the agency examined the relevant factors and provided a reasonable explanation for its decision that is supported by the facts. See Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins., 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983); see also, Al Ghanim Combined Group Co. Gen. Trad. & Cont. W.L.L. v. United States, 56 Fed.Cl. 502, 507 (2003). Thus, although the standard is highly deferential, and does not allow a Court to substitute its judgment for that of the agency, the Court must still conduct a careful review to satisfy itself that the agency's decision is founded on a rational basis. Overstreet Elec. Co. v. United States, 47 Fed. Cl. 728, 742 (2000) (quoting Marsh v. Oregon

---

5. In plaintiff's amended complaint and motion for summary judgment on the administrative record, plaintiff claimed that the VA should have rejected McKesson's Proposal One as unbalanced with regard to price. Furthermore, with respect to the non-price evaluation, plaintiff challenged the VA's evaluation of its proposal under both the Technical Approach factor and the SDB Participation factor. At oral argument, however, plaintiff stated that it no longer wished to pursue these particular claims. Transcript at p. 6–10. Consequently, the Court need only consider: (1) whether the solicitation contained a blanket prohibition on "all or none" offers; (2) whether McKesson's Proposal One was impermissibly accepted on an "all or none" basis; and (3) wheth-

er McKesson submitted individual offers for each region contained in Proposal One.

6. With respect to the third issue, plaintiff contends that McKesson's Proposal Three is a "linked" proposal that does not contain individual bids for the regions listed in McKesson's Proposal One.

7. The Tucker Act, which gives this Court jurisdiction to review post-award bid protests, 28 U.S.C. § 1491(b)(1), requires the Court to apply the APA standard of review in reviewing the agency's decision, § 1491(b)(4).

*Natural Resources Council,* 490 U.S. 360, 378, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989)).

■ Not only must a protestor show a significant error in the procurement process, but it must also show that it was prejudiced by the error. *Synetics, Inc. v. United States,* 45 Fed.Cl. 1, 13 (1999). To establish prejudice, a protestor "must show that there was a substantial chance it would have received the contract award but for that error." *Stratos Mobile Networks USA v. United States,* 213 F.3d 1375, 1380 (Fed.Cir.2000) (quoting *Alfa Laval Separation, Inc. v. United States,* 175 F.3d 1365, 1367 (Fed.Cir.1999)).

### III. The Price Evaluation

ABC's primary contention is that the Request for Proposals ("RFP") prohibited "all or none" offers, and that the VA accepted McKesson's Proposal One in violation of this restriction. In support of its argument, ABC points to the following clause in the solicitation: "NOTE: The Government has determined that it will not accept any offers which are submitted only as an 'ALL OR NONE' offer." AR 0131. ABC contends that the statement unambiguously bars all or none offers. In addition, ABC claims that McKesson's Proposal One was a prohibited "all or none" offer, and that the VA accepted it in violation of the RFP. Finally, ABC argues that even if the Court rejects its interpretation of the "all or none" clause, McKesson failed to comply with the solicitation because it failed to submit individual offers for each of the regions contained in Proposal One. Specifically, ABC claims that McKesson's Proposal Three was a "linked" proposal-containing an offer for *all* 13 geographic regions as a whole. The VA and McKesson contend that ABC's argument is based on a misinterpretation of both the RFP and McKesson's proposals. Because the parties offer inconsistent interpretations, the Court must determine which interpretation is proper.

### A. The "All or None" Offer Clause

■ When parties dispute the meaning of a solicitation, the Court must "begin with the plain language" of the solicitation, and interpret it "in a manner that gives meaning to all of its provisions and makes sense." *McAbee*

*Constr., Inc. v. United States,* 97 F.3d 1431, 1435 (Fed.Cir.1996); *see also Lee Lewis Constr., Inc. v. United States,* 54 Fed.Cl. 88, 90–91 (2002). Next, a Court must determine whether the solicitation provision at issue is ambiguous. *Anderson Columbia Environmental, Inc. v. United States,* 43 Fed.Cl. 693, 698 (1999). A term is ambiguous if, after considering its ordinary meaning, "it is susceptible of two different and reasonable interpretations." *Id.* (citing *Community Heating & Plumbing Co. v. Kelso,* 987 F.2d 1575, 1579 (Fed.Cir.1993)). If the solicitation provisions are clear and unambiguous, the Court's inquiry is at an end, and the plain and ordinary meaning of the provision controls. *Forman v. United States,* 329 F.3d 837, 842 (Fed.Cir.2003) (citing *McAbee,* 97 F.3d at 1435); *see also Anderson Columbia Environmental,* 43 Fed.Cl. at 698 ("If a term is unambiguous, the court cannot assign it another meaning, no matter how reasonable it may appear.") (citations omitted).

In this case, the solicitation stated that the VA would *"not accept any offers which are submitted only as an 'ALL OR NONE' offer."* AR 0131 (emphasis in original). Plaintiff asserts that the only reasonable interpretation of this provision is that it prohibits all-region, "all or none" offers. Defendant and defendant-intervenor contend that the solicitation does not contain a blanket prohibition on all-region, "all or none" offers. Rather, they claim that an "all or none" offer is not prohibited so long as it is not the *only* offer submitted. After carefully examining the unambiguous terms of the clause, in conjunction with the other provisions of the solicitation, this Court finds that the "all or none" clause is susceptible of only one reasonable interpretation—that the solicitation permits "all or none" offers so long as the offeror also submits an individual bid for every region listed in the "all or none" offer in a separate proposal.

First, looking at the precise language used in the "all or none" clause, the Court finds that this clause unambiguously prohibits offerors from submitting *only* an "all or none" offer. Use of the word *only* limits the reach of the "all or none" clause's prohibition. In other words, this provision does not contain a

blanket prohibition on "all or none" offers. Rather, as McKesson suggests, the provision merely informs offerors that the VA would accept an "all or none" offer so long as the offeror also submitted another offer for each individual region submitted in the "all or none" offer. Def.-Int.'s Opp'n at 3 (citing AR 0195 and 0260–73). Accordingly, the Court must reject ABC's interpretation of the "all or none" clause. *See Anderson Columbia Environmental, Inc.*, 43 Fed.Cl. at 698 ("The court must give reasonable meaning to all terms, and not render any portion meaningless.").

In addition, other provisions contained in the solicitation confirm that the clause is not a blanket prohibition on "all or none" offers. Specifically, the solicitation states: "[i]n order to be eligible for award, any Offeror submitting alternate offers (which are multi-region offers) also must submit offers for each individual region offered in the alternate offers." AR 0260–73. As admitted by ABC in its Motion for Judgment on the Administrative Record, this instruction clearly permits multi-region offers that are "contingent on the award of the entire offer . . . [if the offeror] provides stand alone offers for each of the regions included in the combination." Pl's. Mot. for J. at 26–27. Despite this concession, ABC maintains that "because the terms 'multi-region' and 'all-region' are not synonymous, the express allowance of the former does not contradict the express disallowance of the latter." Pl's. Opp'n at 6. The Court disagrees with this interpretation. The solicitation does not limit the number of regions an offeror may include in a multi-region proposal. Rather, the solicitation specifically states that an "offer may be submitted on one, more than one, *or each and every one* of the identified regions." Def.-Int.'s Opp'n at 4 (citing AR 0131) (emphasis added). Thus, the solicitation permitted all-region offers so long as the offeror submitted individual offers for each of the 14 regions in its other proposals.

### B. *McKesson's Proposal One*

█ Next, ABC claims that McKesson's Proposal One was an "all or none" offer that should have been rejected by the VA because

it was " 'only offered for all 14 Veterans Affairs Regions as a whole.' " Pl's. Mot. for J. at 17; AR 0780. The VA and McKesson claim that this proposal was not an "all or none" offer because the offer recognized that the VA maintained the right to set aside three regions for small business concerns. Specifically, McKesson's proposal demonstrated that it understood that Regions 6, 7 and 8 were set aside for small business. The VA and McKesson argue that this was not an "all or none" offer because it allowed the VA to accept the reduced pricing even if the VA maintained the small business set-asides.

The Court finds that the proposal was, in fact, an "all or none" offer. Although the proposal allowed the VA to award at least three regions to small business concerns, the proposal limited acceptance to "all regions" contained in the offer. ABC's interpretation is consistent with the FAR's definition of "all or none" offers. FAR 14.404–5 defines an "all or none" offer as one that "specifies that award will be accepted only on all, or a specified group, of the items." Here, McKesson's offer is clearly "all or none" because the offer required the VA to choose between awarding all available regions or nothing. In other words, even if the VA had not dissolved the set-asides, acceptance would still be limited to all regions available to large businesses (1–5, 9–14). Consequently, the Court finds that McKesson's Proposal One was an "all or none" offer.

### C. *McKesson's Proposal Three*

█ Because the Court finds that Proposal One was an "all or none" offer, the Court must next determine whether it was consistent with the terms of the solicitation. ABC claims that McKesson's Proposal One was a prohibited "all or none" offer because McKesson failed to submit, in a separate proposal, individual offers for each of the regions offered in Proposal One. Specifically, ABC contends that McKesson's Proposal Three, a comprehensive proposal for regions 1 through 13, did not contain individual offers for the 13 regions. Rather, ABC claims that this was an "all or none" multi-region proposal because "McKesson nowhere indicated that the proposal was for anything less than

all 13 regions." ABC argues that the following language on the cover sheet for McKesson's Proposal Three demonstrates that it is for all 13 regions, as a whole: "The following fee schedule pricing, Proposal Three Regions 1 through 13, is a comprehensive proposal ... for *all* regions, excluding region 14." AR 0799 (emphasis added). ABC claims that by using the word "all," McKesson made Proposal Three an "all or none" offer, rather than an offer for any of the individual regions specified in the proposal.

Both the VA and McKesson contend that Proposal Three contained offers for each individual region and that ABC's arguments contradict the plain language of the proposal. The Court agrees with the VA and McKesson and finds that Proposal Three was not a multi-region offer that required the VA to award all 13 regions contained in the offer. Rather, Proposal Three contained individual bids for Regions 1 through 13, separately. A comparison of the cover sheets to Proposal Three and Proposal One clearly demonstrates that Proposal Three was not a multi-region offer. Proposal One included the following statement on its cover sheet: "[Proposal One] is *only* offered for all 14 Veterans Affairs Regions *as a whole*. It is understood that Regions 6, 7 & 8 are set asides and may not factor into the overall volume." AR 0780 (emphasis added). In contrast, Proposal Three did not impose similar restrictions on the VA.

Furthermore, the VA's interpretation of Proposal Three is consistent with the plain language of the solicitation. The solicitation contained FAR 52.212–1(h), a provision that permits the VA to "accept any item or group of items of an offer, unless the offeror qualifies the offer by specific limitations." Thus, McKesson was under no obligation to identify its proposal as a collection of individual offers because—absent specific restricting language—the VA was permitted to accept individual regions under the proposal. In sum, the Court finds that the VA acted reasonably when it determined that McKesson's Proposal Three contained individual offers for the 13 geographic regions and that McKesson submitted only one "all or none" offer-Proposal One. ABC has failed to dem-

onstrate that the VA's interpretation of the proposal was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(A)(2); *Cubic Applications, Inc.,* 37 Fed.Cl. at 342. Accordingly, the Court will not upset the agency's decision in this case.

### *CONCLUSION*

This Court finds that plaintiff has failed to establish that the VA's award to McKesson was irrational, arbitrary, capricious, an abuse of discretion, or otherwise in violation of applicable statutes and regulations. Consequently, based on the record, the Court finds that plaintiff has failed to meet its burden of proof. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (finding that a court must enter summary judgment against a party that fails "to establish the existence of an element essential to that party's case"). Moreover, because plaintiff's claim fails on the merits, this Court need not reach the other issues raised by a request for permanent injunctive relief. *See United Int'l. Investigative Serv., Inc. v. United States,* 41 Fed.Cl. 312, 323 (1998) (setting out the other three factors a protestor must establish to be entitled to a permanent injunction). This Court **GRANTS** defendant and defendant-intervenor's motions for judgment on the administrative record and **DENIES** plaintiff's motion for judgment on the administrative record. Plaintiff's motion for a permanent injunction is **DENIED.** The Clerk will dismiss the amended complaint. Costs for defendant and defendant-intervener.