**LOCKHEED MISSILES & SPACE CO., INC., Appellant,**

v.

**Lloyd BENTSEN, Secretary of the Treasury, Appellee,**

**and**

**AT & T Federal Systems, Intervenor.**

**No. 92–1566.**

United States Court of Appeals, Federal Circuit.

Aug. 30, 1993.

Stuart B. Nibley, Seyfarth, Shaw, Fairweather & Geraldson, Washington, DC, argued for appellant (Trisa J. Thompson and Marc S. Gold, on brief and of counsel).

Dean L. Grayson, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued for appellee. With him on the brief were Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Asst. Director (Harold G. Mosher, Office of Chief Counsel, Internal Revenue Service, Dept. of the Treasury, of counsel).

James J. McCullough, Fried, Frank, Harris, Shriver and Jacobson, Washington, DC,

argued for intervenor (Deneen J. Melander, Washington, DC and Jonathan S. Hoak, AT & T Law Dept., Silver Spring, MD, on brief).

Before NIES, Chief Judge, BENNETT, Senior Circuit Judge, and NEWMAN, Circuit Judge.

BENNETT, Senior Circuit Judge.

## DECISION

Appellant, Lockheed Missiles & Space Co., Inc. (Lockheed), appeals from the decision of the General Services Administration Board of Contract Appeals [1] (board) denying Lockheed's bid protest in connection with the Treasury Multi–User Acquisition Contract (TMAC) awarded by appellee Department of the Treasury [2] to intervenor AT & T Federal Systems (AT & T). We affirm the decision of the board.

## BACKGROUND

On January 4, 1989, a Request for Proposals (RFP), Solicitation No. IRS–88–079, was issued in connection with TMAC, a contract for the procurement of office automation systems, software, and maintenance/support services for use by the IRS. The goods and services supplied by TMAC would directly affect approximately 130,000 IRS employees. Section M of the RFP stated that award would be made to the vendor whose proposal offers "the best overall value to the Government" as determined by "comparing differences in the value of technical features with difference in overall cost to the Government." Section M stressed technical factors over price but also indicated that the IRS would not award the contract at a significantly higher cost to achieve slightly superior technical features.

Section M.3 of the RFP divided the technical factor into two major features each worth 100 points. The features were in turn divided into subfactors of equal "point value"

within their respective feature groups. Cost/price was assigned a value of zero points. Section M.4 of the RFP explained the technical evaluation methodology. To select the winning proposal, the IRS created a formal source selection structure. The structure contained the following entities: (1) a Source Selection Official (SSO) to make the source selection decision; (2) a Source Evaluation Board (SEB) to make recommendations to the SSO; (3) a Technical Evaluation Panel (TEP) to perform the technical evaluations of proposals; and (4) a Business Management Evaluation Panel (BMEP) to evaluate the price proposals.

In response to the IRS solicitation, proposals were submitted in confidence by various vendors including AT & T, Lockheed and International Business Machines Corporation (IBM). Each submitted proposal contained a recommended system/software/services package and its estimated cost to the government. The cost of the IBM proposal was approximately $700 million while the cost of the Lockheed proposal was about $900 million. In comparison, AT & T's proposal would cost the government approximately $1.4 billion. Nevertheless, AT & T was awarded the contract.

Thereafter, IBM and Lockheed protested the nonselection of their proposals. In a hearing before the board (*TMAC I*), both protestors asserted that the IRS: (1) conducted an improper price evaluation; (2) failed to follow the evaluation scheme stated in the RFP; and (3) misevaluated the protestors' proposals. In a decision dated September 25, 1991, the board granted the bid protests. In its opinion, the board stated that although the RFP placed technical factors above price, the IRS evaluation scheme had improperly "discount[ed] price as a factor almost entirely." Slip op. at 28. In support of its conclusion, the board noted that there was no analysis explaining why the government would receive benefits commensurate

---

**1.** *Lockheed Missiles & Space Co. and International Business Machs. Corp.,* GSBCA Nos. 11776–P, 11777–P, 93–1 BCA CCH ¶ 25,401 at 126,497.

**2.** The Internal Revenue Service was appointed as the Executive Agent to conduct the procurement for the Department of the Treasury. According-

with the excessive price charged by AT & T.[3]

The board's *TMAC I* decision was also critical of the RFP. "[N]othing in the RFP justified the overwhelming priority that the IRS accorded technical factors over price. The mere statement that technical was more important than cost in no way communicated the degree to which the IRS emphasized the former." Slip op. at 29. Accordingly, the board instructed the IRS as follows:

> If the agency believes a suitable price/technical tradeoff analysis can be prepared that would comply with the RFP, it may proceed to make one and either confirm the previous award or make a new selection determination as appropriate. Alternatively, based on the award decision that the agency made, if it appears possible that the RFP, as written, will not permit an award in conformance with the Government's needs, respondent retains discretion to amend the RFP to provide a clear statement of its intention to emphasize technical over cost to the degree it believes necessary, and reopen negotiations or take other appropriate actions in accordance with statute and regulation.

Slip op. at 30.

After the board's decision in *TMAC I*, the IRS formed a "working group" to advise the SEB and the SSO on how best to proceed. The working group produced a report which concluded that: (1) a price/technical tradeoff could be performed in accordance with the RFP and (2) the tradeoff supported the award to AT & T. The working group report served as the basis for the decision to award AT & T the contract a second time. Once again, Lockheed and IBM protested, and the action was ultimately brought before the board.

In *TMAC II*, the board found that the selection of AT & T was consistent with the RFP solicitation and was the most advantageous choice for the government, price and other factors considered. The board noted that because no vendor had timely protested the RFP's evaluation provisions, the IRS was left with considerable discretion in conducting its analysis. Accordingly, the board denied the bid protests stating that the IRS decision was reasonable and not an abuse of discretion. Lockheed now appeals.

## OPINION

■ The parties do not dispute the board's findings of fact. The decision of the board on any question of law is neither final nor conclusive and is reviewed de novo by this court. 41 U.S.C. § 609(b) (1988); *Planning Research Corp. v. United States,* 971 F.2d 736, 740 (Fed.Cir.1992).

■ As an initial matter, we note that in its arguments before this court, Lockheed did not protest alleged improprieties in the RFP. Moreover, because Lockheed failed to timely file a protest with the board based upon alleged improprieties in the RFP's proposal evaluation provisions, *see* GSBCA Rules of Practice 5(b)(3)(i),[4] the board did not address that issue and it cannot be raised now on appeal. *Broughton Lumber Co. v. Yeutter,* 939 F.2d 1547, 1555 (Fed.Cir.1991); *Finch v. Hughes Aircraft Co.,* 926 F.2d 1574, 1576 (Fed.Cir.1991).

■ Effective contracting demands broad discretion. *Burroughs Corp. v. United States,* 617 F.2d 590, 598 (Ct.Cl.1980); *Sperry Flight Sys. Div. v. United States,* 548 F.2d 915, 921, 212 Ct.Cl. 329 (1977); *see NKF Eng'g, Inc. v. United States,* 805 F.2d 372, 377 (Fed.Cir.1986); *Tidewater Management*

---

ly, for purposes of this appeal, the Department of the Treasury will be referred to as "the IRS."

**3.** The board also noted that: (1) the IBM proposal appeared to be the best option under two methods of proposal evaluation; and (2) the AT & T proposal was not superior to either the Lockheed or IBM proposal "across the board" as one might expect based upon its price.

**4.** GSBCA Rule of Practice 5(b)(3)(i) states in part:

(3) *Protests.* A protest will be considered by the Board if it includes the information required by 6101.7(b)(2) and is timely filed.

(i) A protest based upon alleged improprieties in any type of solicitation which are apparent before bid opening or the closing time for receipt of initial proposals shall be filed before bid opening or the closing time for receipt of initial proposals.

*Servs., Inc. v. United States,* 573 F.2d 65, 73, 216 Ct.Cl. 69 (1978); *RADVA Corp. v. United States,* 17 Cl.Ct. 812, 819 (1989), *aff'd,* 914 F.2d 271 (Fed.Cir.1990). Accordingly, agencies "are entrusted with a good deal of discretion in determining which bid is the most advantageous to the Government." *Tidewater Management Servs.,* 573 F.2d at 73, 216 Ct.Cl. 69; *see Andersen Consulting Co. v. United States,* 959 F.2d 929, 932 (Fed.Cir. 1992) (holding that contract appeals board did not impermissibly "second guess" agency's contract award decision "in direct violation of our postcription"); *Data Gen. Corp. v. United States,* 915 F.2d 1544 (Fed.Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2011, 114 L.Ed.2d 99 (1991) (holding that the board had neither the authority nor the expertise to second guess an agency's judgment on that agency's procurement needs); *cf. Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 558, 98 S.Ct. 1197, 1219, 55 L.Ed.2d 460 (1978) (holding that administrative decisions may not be set aside "simply because the court is unhappy with the result reached.").

The Competition in Contracting Act of 1984 (CICA), which governs this case, states in part:

> If the board determines that a challenged agency action *violates a statute or regulation* or the conditions of any delegation of any procurement authority issued pursuant to this section, the board may suspend, revoke or revise the procurement authority of the Administrator or the Administrator's delegation of procurement authority applicable to the challenged procurement.

5. 10 U.S.C. § 2305(b)(4)(B) provides in part:

> Except as provided in paragraph (2), the head of the agency shall award a contract … to the responsible source whose proposal is most advantageous to the United States, considering only price and the other factors included in the solicitation.

41 U.S.C. § 253a(b)(1)(A) provides in part:

> In addition to the specifications described in subsection (a) of this section, each solicitation for sealed bids or competitive proposals (other than for small purchases) shall at minimum include—
> (1) a statement of—

40 U.S.C. § 759(f)(5)(B) (1988) (emphasis added).

Lockheed argues that the IRS violated applicable statute and regulation by reducing price as a factor in its decision to award the TMAC contract to such an extent that price was effectively eliminated as a consideration. Price (or cost) must always be a "factor" in an agency's decision to award a contract. 10 U.S.C. § 2305(b)(4)(B); 41 U.S.C. § 253a(b)(1)(A) (1988); FAR § 15.-605(b).[5] Moreover, the importance of price in a price/technical tradeoff must not be discounted to such a degree that it effectively renders the price factor meaningless. *See Grumman Data Sys. Corp.,* GSBCA No. 11635–P, 92–1 BCA CCH ¶ 24,700 at 123,721.

At first glance, Lockheed's argument appears persuasive. For example, Lockheed points out that the AT & T proposal costs 100% more than the IBM proposal and one-half billion dollars more than Lockheed's. Lockheed further notes that, despite the huge difference in price, the board found only two quantified technical subfactors representing less than 15% of all available technical points in which the higher priced AT & T proposal was technologically superior to the Lockheed proposal.[6] Finally, Lockheed asserts that under the IRS's method of evaluation, Lockheed would not have been awarded the contract even if elements of its proposal were given away for free. Accordingly, Lockheed argues that the IRS would have paid almost any amount to acquire the most technically advantageous package.

In *TMAC I,* the board properly found that the price/technical tradeoff analysis presented by the IRS was deficient because it failed

> (A) all significant factors (including price) which the executive agency reasonably expects to consider in evaluating sealed bids or competitive proposals. …

FAR § 15.605(b) states:

> The evaluation factors that apply to an acquisition and the relative importance of these factors are within the broad discretion of agency acquisition officials. However, price or cost to the Government shall be included as an evaluation factor in every source selection.

6. The two quantified technical areas are productivity impacts of software integration and multi-user computer systems.

to indicate whether the government would receive benefits commensurate with the price premium it proposed to pay. Without that missing information, the board could not confirm that price had been a factor in the award decision. Similarly, we cannot determine whether the IRS effectively discounted price as a factor without first ascertaining whether the technical advantages of the AT & T proposal were worth their additional cost.

The board in *TMAC II* found, based upon the IRS's price/technical tradeoff analysis, that the AT & T technical advantages were worth the extra cost. For example, the board found that the Lockheed software would not increase productivity as much as the AT & T software because Lockheed's software required users to memorize various operating system commands. While such a small software advantage may have only resulted in a few extra points for the AT & T proposal in the overall evaluation, the board found that the actual dollar value of the software advantage to the IRS was significant. The total productivity value of the AT & T software solution was calculated to be $467 million as compared to $80 million for Lockheed.

In addition, the board found that AT & T's models 2 and 3 multi-user systems (MUSs) significantly outperformed their Lockheed counterparts during the "Functional Workload Demonstrations." [7] The IRS quantified this advantage and calculated productivity values of $500,720,221 for the AT & T MUS models and $35,295,084 for the Lockheed devices. Finally, the board considered the impact of the nonquantified discriminators and found that the AT & T proposal offered substantially more value to the government than the other proposals.

■ Accordingly, the findings of the board indicate that the IRS, through its price/technical tradeoff analysis, neither disregarded price nor discounted it to such a degree that it was effectively rendered meaningless. The actual productivity values may vary slightly from the IRS estimates. However,

Lockheed does not object to the board's findings, and small or immaterial errors are generally not adequate grounds for a successful protest. *See Andersen Consulting*, 959 F.2d at 932–33; *SMS Data Prods. Group, Inc. v. United States*, 900 F.2d 1553, 1557 (Fed.Cir. 1990); *Excavation Constr., Inc. v. United States*, 494 F.2d 1289, 1293, 204 Ct.Cl. 299 (1974).

■ Lockheed raises a second argument in its brief when it asserts that the IRS abused its discretion by skewing the importance of the two aforementioned technical subfactors, software and MUS productivity, beyond the limits established by the RFP. Lockheed argues that although the two subfactors represented less than 15% of all available technical points, those subfactors provided the IRS's main justification for spending millions of additional dollars for the AT & T proposal.

Section M.3 of the RFP identifies and assigns point values to the technical subfactors considered important by the IRS. The IRS used the assigned point values to evaluate and compare the technical strengths of the different proposals. Cost/price considerations did not enter into this part of the analysis since *cost was assigned a value of zero points*. After the AT & T proposal's technical strengths were determined, the IRS then went on to decide whether the value of those technical strengths was worth the higher price.

■ Neither the FAR nor the broad language of the RFP requires that evaluation points be proportional to cost. Accordingly, a proposal which is one point better than another but costs millions of dollars more may be selected if the agency can demonstrate within a reasonable certainty that *the added value of the proposal is worth the higher price*. Here, as we have already noted, the IRS tradeoff analysis revealed that the dollar value of the two technical subfactors together with the value of the nonquantified discriminators justified the additional price of the AT & T proposal. Thus, use of

---

7. Functional Workload Demonstrations are tests in which the offeror was required to run each of its multi-user systems at approximately 70% of

the system's maximum user level with varying workloads. The test was used by the IRS to determine the operating speeds of each system.

the IRS's evaluation method did not constitute an abuse of discretion because the method did not skew the importance of the two technical subfactors.

## CONCLUSION

Government agencies are accorded a good deal of deference in awarding contracts. FAR § 15.605(b) (1992). Here, the IRS has sufficiently demonstrated that price was a factor in the final decision to award the TMAC contract. The decision of the board is therefore

*AFFIRMED.*