**GRUMMAN DATA SYSTEMS CORPORATION,**
Appellant,

v.

**Sheila WIDNALL, Secretary of the Air Force, Appellee,**

and

**Contel Federal Systems, Inc., Intervenor.**

No. 93–1271.

United States Court of Appeals, Federal Circuit.

Decided Jan. 26, 1994.

David R. Hazelton, Latham & Watkins, of Washington, DC, argued, for appellant. With him on the brief was James H. Barker.

Jeri K. Somers, Dept. of Justice, of Washington, DC, argued, for appellee. Frank W.

Hunger, Asst. Atty. Gen., David M. Cohen, Director and George M. Beasley, III, Senior Trial Counsel, Commercial Litigation Branch, Dept. of Justice, of Washington, DC, were on the brief, for appellee. Also on the brief was Clarence D. Long, III, Office of General Counsel, Dept. of the Air Force, of Washington, DC, of counsel.

William H. Butterfield, McGuire, Woods, Battle & Boothe, Washington, DC, argued, for intervenor. With him on the brief was Charlotte Rothenberg Rosen. Also on the brief was Phillip L. Radoff, Special Counsel, GTE Government Systems, Chantilly, VA.

Before CLEVENGER, Circuit Judge, BENNETT, Senior Circuit Judge, and SCHALL, Circuit Judge.

BENNETT, Senior Circuit Judge.

## DECISION

Appellant, Grumman Data Systems Corporation (Grumman) appeals from the decision of the General Services Administration Board of Contract Appeals (board) denying Grumman's bid protest in connection with a federal procurement contract known as the "Joint Staff Automation for the Nineties" (JSAN) awarded by appellee, Department of the Air Force (Air Force), to intervenor, Contel Federal Systems, Inc. (Contel).[1] We affirm the decision of the board.

## BACKGROUND

On January 22, 1991, a Request for Proposals (RFP), Solicitation No. F19630–90–R–0006, was issued in connection with JSAN, a contract for the procurement of an office automation system for use by the Joint Chiefs of Staff. Among the bidders submitting proposals in response to the RFP were Contel and Grumman. Section M.2, Basis of Award, of the RFP required the Source Selection Authority (SSA) to select the proposal that delivered the best overall value to satisfy the Air Force's needs. Section M.2 further specified that the selection was to be

based on "how well each proposal satisfies the evaluation criteria as described in paragraph M.3 and also on an integrated assessment of the proposals submitted in response to this RFP."

The evaluation criteria set out in section M.3 of the RFP provided in part:

3.1 *General.* The evaluation will be based on an integrated assessment of the offeror's proposal. The integrated assessment of the offeror's proposal will address mandatory requirements, terms and conditions, technical factors, life cycle cost, and level of Live Test Demonstration (LTD) performance. The offeror's proposals will be evaluated and rated by the Government. This assessment will address two areas (listed in order of importance) of consideration which are:

Technical

Cost[2]

Subsection M.3.3.1 of the solicitation provided for "evaluation credit" as follows:

Offered components, features and capabilities beyond the minimum mandatory requirements specified in the RFP; Section C references below will be evaluated depending upon the degree to which they benefit the Government. To receive evaluation credit the offered additional component, feature and/or capability *beyond the minimum requirements* must substantially benefit the Government as determined by its contribution to the specific items, factors, and considerations identified below.

(Emphasis added.) As the board acknowledged in its decision, this subsection of the RFP, read in isolation, can be interpreted as precluding the Air Force from according any comparative value to items, features, or components that had failed to meet established evaluation standards. *Grumman Data Sys. Corp.*, GSBCA No. 11939–P, 93–2 BCA (CCH) ¶ 25,776, at 128,249, 128,277, 1992 WL 409542. Nevertheless, the Air Force conducted a head-to-head comparison of the Grumman and Contel proposals and consid-

---

**1.** *Grumman Data Sys. Corp.*, GSBCA No. 11939–P, 93–2 BCA (CCH) ¶ 25,776, at 128,249, 1992 WL 409542.

**2.** The RFP did not state how much more important technical factors were as compared to cost.

ered factors which had not received credit during the initial technical evaluation.

The Air Force's Source Selection Evaluation Board (SSEB) produced a report containing a detailed comparison of the Grumman and Contel proposals. The SSEB report concluded that the Contel proposal was technically superior to the less expensive Grumman proposal. Based upon the report's conclusions as well as the minutes of the Source Selection Advisory Council briefing and the information conveyed during a briefing on December 4, 1991, the Source Selection Authority awarded the JSAN contract to Contel. Thereafter, Grumman filed its first bid protest with the board (*Grumman I*).

In *Grumman I*, the board granted Grumman's protest stating that the Air Force had failed adequately to explain whether the added value of the Contel proposal was worth its higher price. *Grumman Data Sys. Corp.*, GSBCA No. 11635–P, 92–2 BCA (CCH) ¶ 24,-999, at 124,591, 124,609, 1992 WL 494606. The board directed the Air Force to: (1) review the two proposals; (2) consider whether the specific technical enhancements offered by Contel justified a cost that was 58.8% higher than Grumman's cost; (3) articulate and document the rationale for its conclusion; and (4) either confirm the award to Contel or terminate that award and proceed in accordance with statute and regulation. *Id.* Following the board's instructions, the Air Force conducted an extensive best value analysis to determine the value of each proposal as compared to its cost. The results of that analysis again supported the award of the JSAN procurement to Contel. Contel was officially re-awarded the JSAN contract on July 13, 1992, and Grumman filed its second protest (*Grumman II*).

In *Grumman II*, the board discovered various errors in the Air Force's best value analysis. The board then proceeded to revise the Air Force's best value analysis by including additional information not considered by the SSA in order to conduct a more accurate comparison of the two competing proposals. The board's analysis was based upon evidence introduced at trial as well as the testimony of the parties' respective technical experts. Ultimately, the board upheld the Air Force's selection of Contel, and Grumman now appeals.

The board's jurisdiction over this dispute was based on 40 U.S.C. § 759 (1988). Under section 759(f)(1), the same standard of review that governs claims brought under the Contract Disputes Act of 1978 also applies to this dispute. Accordingly, the agency's procurement selection is reviewed *de novo* by the board. 41 U.S.C. § 609(b) (1988). On appeal to this court, the board's findings of fact are final unless fraudulent, arbitrary, capricious or in bad faith or not supported by substantial evidence, 41 U.S.C. § 609(b) (1988), and its conclusions of law are reviewed *de novo*. *Id.*; *see Cecile Indus., Inc. v. Cheney*, 995 F.2d 1052, 1054 (Fed.Cir. 1993).

■ Government agencies are entrusted with a good deal of discretion in making procurement decisions. 40 U.S.C. § 759(e) (1988); *see Lockheed Missiles & Space Co. v. Bentsen*, 4 F.3d 955, 958–59 (Fed.Cir.1993); *Tidewater Management Servs., Inc. v. United States*, 573 F.2d 65, 73 (Ct.Cl.1978). Therefore, in reviewing procurement decisions, a board may not second guess an agency's procurement decision and/or substitute its own judgment for that of the government. *Andersen Consulting Co. v. United States*, 959 F.2d 929, 932 (Fed.Cir.1992); *Data Gen. Corp. v. United States*, 915 F.2d 1544, 1551–52 (Fed.Cir.1990), *cert. denied sub nom. SMS Data Prods., Inc.*, —— U.S. ——, 111 S.Ct. 2011, 114 L.Ed.2d 99 (1991).

■ Grumman argues that the board improperly substituted its judgment for that of the government by relying on its own best value analysis rather than the best value analysis developed and employed by the Air Force. Grumman's position is incorrect. The board cannot be accused of substituting its own procurement opinion because it upheld the Air Force's selection of the Contel proposal. While it is true that the board based its decision upon a different best value analysis than that relied on by the Air Force, such action is entirely permissible under a *de novo* standard of review because the reviewing board is not limited to the findings made by the agency or contained in the initial

decision. *Assurance Co. v. United States*, 813 F.2d 1202, 1206 (Fed.Cir.1987). Under *de novo* review, a board may consider the analysis developed by the agency, *see, e.g., Lockheed Missiles & Space Co.*, 4 F.3d at 959, or produce and consider its own analysis. *Cf. Fucik v. United States*, 655 F.2d 1089, 1097 (Ct.Cl.1981) (holding that under *de novo* review, a court may conduct a new trial and base its decision on new evidence).

Despite the wide discretion afforded to procuring agencies in selecting a bid, all submitted proposals must be evaluated consistent with statute, regulation and the standards set forth in the RFP or the board will be required to suspend, revoke or revise the procurement authority. 40 U.S.C. § 759(f)(5)(B) (1988); *see Lockheed Missiles & Space Co.*, 4 F.3d at 959. Grumman argues that the Air Force's head-to-head comparison of the Contel and Grumman proposals contradicted the evaluation standards articulated in subsection M.3.3.1 of the RFP because the Air Force considered factors which had not received credit during the initial technical evaluation.

This same argument was raised by Grumman below, but the board concluded that Grumman was interpreting subsection M.3.3.1 out of context. The board maintained that section M.2 of the RFP expressly permitted the Air Force's head-to-head comparison. As the board stated:

> The problem with Grumman's argument is that Section M.2 "Basis for Award" informed offerors that selection would not only be based upon how well the offers satisfied the technical evaluation criteria set forth in Section M.3 but '*also* on an integrated assessment of *the proposals* submitted in response to this RFP.' Pro-

test File, Exhibit 54 at 318 (emphasis added). We deem this Section's latter language to permit a head-to-head comparison of proposals in an integrated fashion without regard to whether the proposal had been given evaluation credit for a particular feature. To interpret the RFP in the fashion Grumman suggests would ignore this clear language of Section M.2. *Grumman*, 93–2 BCA (CCH) ¶ 25,776, at 128,277. On appeal, Grumman counters that it is the board that is reading portions of the RFP in isolation. Specifically, Grumman argues that section M.3 of the RFP supports its alternate interpretation of section M.2.

■ However, Grumman's arguments as to the proper interpretation of the RFP are untimely because they were raised after bids had been submitted. 48 C.F.R. § 33.-103(b)(2) and GSBCA Rule of Practice 5(b)(3)(i) [3] each expressly provide that protests based upon alleged "improprieties" which are apparent in the RFP must be raised prior to bidding. *See Lockheed Missiles & Space Co.*, 4 F.3d at 958. This encourages the early detection of RFP errors, insures that each contractor's bid is based upon the same set of specifications and decreases the likelihood that the government would later be forced to issue a corrected RFP and reopen a solicitation.

■ As we have stated, government agencies are entrusted with a good deal of discretion in making procurement decisions. Thus, if a bidder protests alleged ambiguities in the RFP after bidding, the agency has the discretion to choose its own interpretation of the disputed language, and that interpretation is binding unless it is unreasonable or otherwise constitutes an abuse of the agency's discretion.[4] *See Dalfi, Inc.*, GSBCA 8975–P,

---

3. GSBCA Rule of Practice 5(b)(3)(i) states in part:

> (3) *Protests.* A protest will be considered by the Board if it includes the information required by 6101.7(b)(2) and is timely filed.
> (i) A protest based upon alleged improprieties in any type of solicitation which are apparent before bid opening or the closing time for receipt of initial proposals shall be filed before bid opening or the closing time for receipt of initial proposals.

48 C.F.R. § 33.103(b)(2) contains nearly identical language.

4. Grumman's objection to alleged improprieties in the RFP would not be untimely if the alleged improprieties were not apparent prior to bidding. Under the rule of *contra proferentum*, a latent or non-obvious ambiguity may be construed against a contract's drafter provided the non-drafting party's proposed interpretation is reasonable. This principle has been repeatedly applied in the field of government contracts, *see, e.g., Hills Materials Co. v. Rice*, 982 F.2d 514, 516 (Fed.Cir.1992); *Neal & Co. v. United States*, 945 F.2d 385, 389–90 (Fed.Cir.1991); *Fort Vancouver Plywood Co. v. United States*, 860 F.2d 409, 414

87–3 BCA ¶ 20,018, at 101,356, 1987 WL 41242.

■ Here, the Air Force's interpretation of the RFP was not unreasonable. As the board explained, section M.2 states that selection would not only be based upon the technical evaluation criteria set forth in section M.3, but also on "an integrated assessment of the proposals." Contrary to Grumman's position, there is no requirement in the RFP that the integrated assessment must be limited to items, factors and considerations which were not given evaluation credit in the initial technical evaluation. Moreover, there is no evidence indicating that Grumman was prejudiced by the Air Force's interpretation of the RFP. Indeed, the board found that Grumman appeared to have adopted the same interpretation as the board in preparing its bid.

■ Finally, Grumman seeks to have the award to Contel overturned because the board permitted the Air Force to depart from standard accounting principles in conducting its best value analysis. The board found that the Air Force "may have violated some technical accounting principles" in conducting its best value analysis when it assigned a dollar value to the time the Joint Staff personnel were expected to spend while training to use a new computer system. *Grumman,* 93–2 BCA (CCH) ¶ 25,776, at 128,279. However, small errors made by the procuring agency are not sufficient grounds for rejecting an entire procurement. *Lockheed Missiles & Space Co.,* 4 F.3d at 960. "[O]verturning awards on de minimis errors wastes resources and time, and is needlessly disruptive of procurement activities and governmental programs and operations." *Andersen Consulting Co.,* 959 F.2d at 932; *see SMS Data Prods. Group, Inc. v. United States,* 900 F.2d 1553, 1557 (Fed.Cir.1990); *Excavation Constr., Inc. v. United States,*

494 F.2d 1289, 1293, 204 Ct.Cl. 299 (1974). Any accounting errors committed by the Air Force were de minimis. As the board noted, the Air Force's decision regarding the training time "made good sense" and was "reasonable." *Grumman,* 93–2 BCA (CCH) ¶ 25,776, at 128,279. Accordingly, this final argument is not a sufficient basis for allowing Grumman's protest.

### CONCLUSION

The board's use of its own best value analysis was permissible under the *de novo* standard of review. Grumman failed to raise alleged ambiguities apparent in the RFP prior to bidding and must accept the Air Force's interpretation of the disputed language since that interpretation was reasonable. Moreover, Grumman failed to demonstrate that it was prejudiced by the Air Force's alleged erroneous interpretation. Finally, de minimis errors in the Air Force's analysis of proposals are not a sufficient basis to support a successful bid protest. The board's decision is

AFFIRMED.

(Fed.Cir.1988); *United States v. Turner Constr. Co.,* 819 F.2d 283, 286 (Fed.Cir.1987), and was extended by section 33.103(b)(2) of the FAR and Rule 5 of the GSBCA Rules of Practice to cover ambiguities present in bid protests.

Grumman argues that subsection M.3.3.1 of the RFP is ambiguous and open to an alternate interpretation but does not assert that the alleged ambiguity is latent. However, even if it were,

Grumman's interpretation cannot be adopted because it is unreasonable since, as the board points out, it would render the "integrated assessment of proposals" required by section M.2 meaningless. *Intel Corp. v. International Trade Comm'n,* 946 F.2d 821, 826 (Fed.Cir.1991) ("When interpreting a contract, we must, where possible, give meaning and purpose to every term used in the contract.").