TECH SYSTEMS, INC., Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 01–186C.

United States Court of Federal Claims.

Aug. 23, 2001.[1]

---

1. This opinion was issued under seal on August 13, 2001. Pursuant to ¶ 2 of the ordering lan-

guage, the parties were requested to identify protected/privileged material subject to deletion. The parties responded that no deletions were requested. In the interim the court discovered an error in terminology that impacts its analysis, although neither the result nor the judgment. Therefore, this opinion is substituted for the one issued on August 13, 2001. The prior judgment is vacated, and judgment shall enter upon the filing of this substituted opinion.

Daniel S. Koch, Bethesda, MD, for plaintiff.

Gregory R. Firehock, Washington, DC, with whom was Acting Assistant Attorney General Stuart E. Schiffer, for defendant. Lynn W. Flanagan, United States Department of Agriculture, of counsel.

## SUBSTITUTE OPINION

MILLER, Judge.

This post-award bid protest is before the court after argument on cross-motions for judgment on the administrative record. The issue to be decided is whether the United States Department of Agriculture acted arbitrarily in awarding a contract procurement set-aside for small businesses to a company that allegedly is not a qualifying small business. After a truncated [2] argument on the cross-motions, on June 12, 2001, the court remanded Count V to the United States Department of Agriculture to allow the contracting officer to issue a "Cost & Technical Trade-Off Analysis" pursuant to Federal Acquisition Regulation, 48 C.F.R. ("FAR") §§ 15.101–1, 15.308 (2000). This decision, which was filed with the court on July 17, 2001, concluded that the successful bidder offered the best value to the Government. Plaintiff thereafter filed its Renewed Motion for Summary Judgment on Count V of its Amended Complaint, and implicitly revived Counts I–IV, which had been deferred pending the Count V remand.

## FACTS

The following facts are drawn from the Administrative Record, as well as affidavits filed in connection with the parties' motions. The United States Department of Agriculture (the "USDA") contracts with an outside vendor to sort and deliver mail at three buildings of its Management Office in Kansas City. The USDA's contract with its existing vendor, Markrist Engineers, Inc. ("Markrist"), was due to expire on September 30, 2000. On August 11, 2000, the USDA issued Request for Proposals No. KCMO–02–N–00 (the "RFP") to secure a replacement contractor. The new contract was to begin on January 1, 2001, and last for one year, with two one-year optional periods. The solicitation weighed past performance and technical abilities at 65%, quality assurance at 20%, and price at only 15%. Ultimately, out of 100 possible points, plaintiff scored less than four points lower than the awardee, and its price was 10% lower than that of the awardee.

The USDA set aside the procurement for small business concerns, which are businesses that meet certain criteria as defined by the Small Business Administration (the "SBA"). Although the contract was awarded without negotiation, insofar as the concept contemplates interaction between the owner and offeror, the applicable FAR regulation treated the procurement as negotiated.[3]

One criterion for an SBA set-aside is that an eligible business has annual receipts under the small business threshold set for the Standard Industrial Classification ("SIC") Code under which the proposed contract services fall. The proposed mail services fell under SIC Code 8744 ("Facility Support Management Services"), which set a maximum size standard of $5.0 million in annual receipts. In response to the RFP, Tech Systems, Inc. ("plaintiff"); Guilltone Properties, Inc. ("Guilltone"); and 12 other offerors submitted proposals to the USDA. Both plaintiff and Guilltone certified that they qualified as small business concerns for purposes of the proposal.

Due to delays in the procurement process,[4] the original contract was extended twice, ulti-

---

2. Subsequent to the April 25, 2001 filing of its Amended Complaint for Declaratory and Injunctive Relief, plaintiff agreed to dismissal of Count VI and joined with defendant in requesting remand of Count V.

3. The acquisition proceeded as a "commercial items" procurement under Part 12 of the FAR, which generally imposes less onerous procurement requirements in an effort to simplify acqui-

sition processes and render them more comparable to private commercial practices. See FAR § 12.000; see also FAR § 12.102(b) (contracting officers should use procedures of Part 15, Contracting by Negotiation, "as appropriate").

4. The delays in the procurement process occurred while the contracting officer was negotiating whether the contract must be awarded to

mately to December 31, 2000.[5] Angela R. Allen, the Contracting Officer, was supported by a team that reviewed the bids and provided her with its analysis on November 22, 2000. Upon Ms. Allen's November 27, 2000 review, she determined that errors in the evaluations would require the team to "take another look at the proposals." Ms. Allen received the team's re-evaluations on December 5, 2000.

On December 14, 2000, the contracting officer ordered reports from Dun & Bradstreet Inc. containing financial information on the three highest-ranking firms. Ms. Allen received these reports on December 18, 2000. The Dun & Bradstreet reports provided annual "sales" figures for both Guilltone and plaintiff.[6] According to Dun & Bradstreet, Guilltone's President John Guillory "submitted the following partial estimates dated MAY 01 2000: Sales for 1999 were $4,000,000."

By mid-December 2000, no award had been made, and the existing contract was soon to expire. According to an undated "Note to the File" in the Administrative Record, Ms. Allen investigated securing an additional one-month contract extension with Markrist on December 6, 2000. The extension would allow time for the contracting officer to make the "award and for contractor transition." FAR § 15.503(a)(2) requires a contracting officer, in advance of contract award, to notify unsuccessful offerors of the name and address of the apparently successful offeror, when the procurement is set aside for small businesses, in order to permit unsuccessful offerors to file a size protest with the SBA, unless the contracting officer documents the urgency of making an award without notice. FAR § 15.503(a)(2)(iii). Ms. Allen made the determination, documented in the undated note to file, that "time did not allow for pre-award notifications due to the need to award the contract immediately so that mailroom services were not interrupted." According to Ms. Allen, the lack of time was due to Markrist's inability to extend further contract performance.[7] Ultimately, Guilltone's offer was $1,683,470.00, and plaintiff's, $1,513,270.77—for a difference of $170,199.23.

The contracting officer awarded the contract to Guilltone on December 18, 2000.

the National Institute for the Severely Handicapped or to a small business.

5. The first contract extension was for two months, until November 30, 2000. The second contract extension was at a slightly higher price and reduced level of service than the original contract because the service provider, Markrist, had obligated some of the necessary vans to other projects and thus needed to rent vans, which altered its cost structure. Mark Patel, Vice President of Markrist, avers that the contracting officer made the decision to reduce the level of service from six vans to three in order to minimize the cost impact on the USDA. *See* (First) Affidavit of Mark Patel, May 3, 2001, ¶ 5. Conversely, the contracting officer's affidavit implies that the reduced level of service was due to Markrist's inability to secure more than three vans. *See* Affidavit of Angela R. Allen, May 10, 2001, ¶ 8.

6. Although the contracting officer made her own independent request for Dun & Bradstreet reports, plaintiff had included a Dun & Bradstreet "Past Performance Evaluation" of itself with its bid.

7. Three differing accounts appear in the record as to Markrist's ability or inability to extend contract performance for an additional month. Ms. Allen's undated "Note to the File" states that on December 8, 2000, Markrist informed her that it could not obtain an extension on its vehicle lease and thus would not be able to extend contract performance. The note to file continues: "The contractor and I spent several days trying to locate vehicles with no results."

However, Ms. Allen's affidavit states that she contacted Markrist "on or about December 15, 2001 to request yet another contract extension." Allen Aff. ¶ 25. Although willing to extend, Markrist also "pushed for information about the impending award." *Id.* ¶ 25. Markrist called back later that day and informed her that it would only be able to provide one van because the lease was expiring on the other two, which prompted her to inquire about using General Services Administration vans. *See id.* ¶ 26.

Mr. Patel avers that Ms. Allen never requested definitively, but merely asked if it might be possible, for Markrist to extend its performance beyond December 31, 2000. *See* (First) Patel Aff. ¶¶ 6, 8. At the time Ms. Allen questioned Markrist's ability to extend, she informed it of the name of the awardee, and Mr. Patel made it clear that Markrist "would definitely have been able to agree to, and perform, another extension." *Id.* ¶ 8. "Subsequently, Ms. Allen called back and stated that the awardee would be able to begin the new contract as of January 1, 2001." *Id.* ¶ 7.

Ms. Allen did not document her rationale for the decision to award, although FAR § 15.308 calls for a cost/technical tradeoff. Moreover, FAR § 15.503(b) requires a post-award notice stating the name and address of the awardee, as well as the price. Notice of the award was mailed to plaintiff and other unsuccessful bidders several days after the award had been made. The letter, dated December 21, 2000, identified the awardee as "Guilltone Industries," rather than Guilltone Properties, Inc., and did not state Guilltone's business address or the contract price. Plaintiff received notice of the award on January 2, 2001. Guilltone began performing the contract on or about January 2, 2001.

Pursuant to a request for a debriefing regarding the reasons why plaintiff did not receive the award, Ms. Allen, on January 4, 2001, mailed a debriefing letter to plaintiff, via certified mail, which again described the awardee as "Guilltone Industries," but did not disclose the awardee's address or the price. An enclosure with the debriefing letter identified the successful bidder as "Guilltone/WC Parrish." Plaintiff was listed as the third-ranking offeror after Guilltone, and for the first time the difference in prices between them was revealed. By letter dated January 11, 2001, the contracting officer acknowledged an error in the Abstract of Proposals that changed plaintiff's ranking from third to second.

On January 15, 2001, plaintiff filed a size protest with Ms. Allen, who forwarded it to the SBA's San Francisco Area Office (the "SBA's Area Office"). SBA regulations require that a size protest regarding a non-negotiated procurement be filed prior to the close of the fifth business day after proposal opening. 13 C.F.R. § 121.1004(a)(1). The protest was filed more than five business days after plaintiff received the initial notice from the USDA, but less than five business

days after it received the debriefing materials.[8] The basis of plaintiff's size protest was Guilltone's profile on the SBA's PRO–Net database, which, according to plaintiff, demonstrates that Guilltone did not qualify as a small business for the purposes of the RFP.[9] The PRO–Net Firm Profile for Guilltone contains an entry for "Average Annual Gross Revenue," which listed a figure of $5.5 million. Guilltone's "Average Number of Employees" is listed as 300. Ms. Allen did not, nor did procurement regulations require her to, access the SBA's PRO–Net before granting the award.

The contracting officer provided information to the SBA's Area Office regarding plaintiff's size protest. Ms. Allen also explained that Guilltone properly had identified itself on its bid and that the use of a different name—Guilltone Industries, as opposed to Guilltone Properties, Inc.—in the USDA's debriefing letters sent to unsuccessful offerors was a clerical error. (Defendant characterizes the error as a "slight misidentification" or "inexact identification." Def.'s Br. filed Apr. 20, 2001, at 8, 10.) Ms. Allen noted her reliance on a Dun & Bradstreet business information report on Guilltone. However, she did not inform the SBA's Area Office that the USDA had never informed plaintiff of the awardee's address or that the USDA did not disclose the awardee's price until January 11, 2001.

The SBA's Area Office dismissed plaintiff's size protest as untimely because it was not filed within five days of plaintiff's receipt of post-award notice pursuant to 13 C.F.R. § 121.1004(a)(2) (2000). The SBA's Area Office cited to 13 C.F.R. § 121.1004(a)(2), which applies to negotiated procurements, and which requires a size protest to be filed within five business days of notice of the prospective awardee. This is a pre-award

---

**8.** Plaintiff recognized that its size protest may have been viewed as untimely. For this reason plaintiff requested that Ms. Allen file the size protest, because the contracting officer is not subject to the five-day deadline. Ms. Allen declined to bring a size protest, but did forward plaintiff's protest to the SBA.

**9.** "PRO–Net" is a listing of small businesses officially maintained by the SBA. PRO–Net is avail-

able 24 hours per day, every day, over the Internet. According to the SBA's website, PRO–Net "is a search engine for contracting officers" and "an Internet-based database of information on more than 195,000 small, disadvantaged, 8(a), HUBZone, and women-owned businesses." Businesses profiled on the PRO–Net system can be searched by SIC Codes, key words, location, and other criteria.

notice requirement. When plaintiff received notice, the awardee was no longer prospective.

Plaintiff appealed the SBA's Area Office decision to the SBA's Office of Hearings and Appeals (the "OHA") in Washington, DC. The OHA exercised its discretion and accepted plaintiff's appeal. During the appeal Ms. Allen informed the OHA that she believed the only irregular aspect of the notification process was the mistake in identifying Guilltone, which would not impede significantly any effort to discover Guilltone's identity or PRO–Net Firm Profile.[10] The OHA dismissed the appeal as moot because it was not filed prior to the award of the contract, as required for the OHA to hear appeals from the SBA's Area Office.

Plaintiff then brought suit in the Court of Federal Claims alleging that the USDA: 1) failed to award the procurement to a small business; 2) failed to reasonably investigate the awardee's size; 3) failed to give pre-award notification to the other offerors; 4) failed to give proper post-award notice to the offerors; and 5) failed to articulate a basis for its best-value tradeoff. After the parties had filed two sets of briefs addressing plaintiff's complaint and additional counts in plaintiff's amended complaint, the parties agreed that Count 5 of the amended complaint should be remanded to the USDA to allow the contracting officer to issue the required written cost/technical tradeoff analysis.

On remand the contracting officer assembled a four-person Cost/Technical Tradeoff Team (the "CTTT"): Khristy Baughman, Chief of Contracting and Acquisition Branch; Jerry Shead, Contract Specialist; Michael Broderick, Contracting Officer's Representative, and Ms. Allen herself.[11] Ms. Allen explained that although Guilltone was initially selected by a process of "point-scoring the proposals against the criteria in the original solicitation," because there were nine other offerors who submitted lower prices than Guilltone, "a cost-technical tradeoff is appropriate to determine whether [Guilltone's] offer represents the best value to the USDA." Each team member independently reviewed each of the 13 proposals against the original criteria and independently compared each evaluation against Guilltone's. Ms. Allen then conducted an "independent analysis" of the proposals and CTTT evaluations, considering each team member's tradeoff analysis in performing her own analysis which found Guilltone to be the best value to the USDA.

## DISCUSSION

### 1. Jurisdiction and standard of review

The Tucker Act, 28 U.S.C. § 1491(b)(1) (1994 & Supp. V 1999), allows a protestor to challenge in the Court of Federal Claims "the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."

■ The court evaluates the procuring agency's conduct to determine whether it was arbitrary and capricious. See 28 U.S.C. § 1491(b)(4) ("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5."). To prevail under the arbitrary and capricious standard, a frustrated offeror is required to establish that (1) the Government officials involved in the procurement process were without a rational and reasonable basis for their decision, or (2) the procurement procedure involved a clear and prejudicial violation of applicable statutes and regulations. See Statistica, Inc. v. Christopher, 102 F.3d 1577, 1581 (Fed.Cir. 1996); Ellsworth Assocs., Inc. v. United States, 45 Fed.Cl. 388, 392 (1999), appeal dismissed, 6 Fed.Appx. 867, 2001 WL 267859, (Fed.Cir. 2001).

---

10. In a letter to the OHA dated February 12, 2001, Ms. Allen stated: "There was nothing covert in the use of Guilltone Industries listed in the notice to unsuccessful offerors. That name was mistakenly picked up from a letter in Guilltones' [sic] proposal when the letters were prepared."

11. The original technical evaluation team was comprised of two persons: Dorothy Malone, Chief of Information and Operations Branch; and Michael Broderick, Contracting Officer's Representative. Ms. Malone was not available to be included on the CTTT.

█ A protestor must prove by a preponderance of the evidence the arbitrary and capricious nature of the Government's actions or the violation of an applicable procurement regulation. *See CACI Field Servs., Inc. v. United States,* 854 F.2d 464, 466 (Fed.Cir.1988); *Ellsworth,* 45 Fed.Cl. at 392; *R.R. Donnelley & Sons, Co. v. United States,* 38 Fed.Cl. 518, 521–22 (1997); *PCI/RCI v. United States,* 36 Fed.Cl. 761, 767 (1996). The injunctive relief sought by a frustrated offeror is appropriate "only in extremely limited circumstances." *CACI, Inc.-Fed. v. United States,* 719 F.2d 1567, 1581 (Fed.Cir. 1983). In the context of a protest of a negotiated procurement, an agency is entitled to wide discretion in its evaluation of proposals. *Grumman Data Sys. Corp. v. Widnall,* 15 F.3d 1044, 1046 (Fed.Cir.1994); *Ellsworth,* 45 Fed.Cl. at 392. The reviewing court cannot substitute its own judgment for that of the agency. *Ellsworth,* 45 Fed.Cl. at 392–93. Furthermore, technical rating decisions are the "minutiae of the procurement process ... which involve discretionary determinations of procurement officials that a court will not second guess." *E.W. Bliss Co. v. United States,* 77 F.3d 445, 449 (Fed.Cir.1996).

█ It is well established that the scoring of proposals within the competitive range falls within the discretion of the procurement officials. *See Harris Data Communications, Inc. v. United States,* 2 Cl.Ct. 229, 241 (1983). Thus, " '[i]n reviewing [plaintiff's] protest of the agency's technical evaluation and decision to eliminate an offeror from the competitive range, we will not evaluate the proposal anew, but instead will examine the agency's evaluation to ensure that it was reasonable and in accord with the evaluation criteria listed in the solicitation." ' *Beta Analytics Int'l, Inc. v. United States,* 44 Fed.Cl. 131, 137 (1999) (quoting *Beneco Enter., Inc.,* 70 Comp. Gen. 574, 576, 1991 WL 119139 (1991)), *appeal dismissed,* No. 00–5040 (Fed. Cir. July 9, 2001) (Table).

A motion for judgment on the administrative record is not a true motion for summary judgment. *See* RCFC 56.1. Summary judgment, as it implicates an administrative record, has evolved as a convenient format for arguing in court a case based on such a record. The statements and counter-statements of fact, with appropriate citations to the administrative record, argue the significance and weight accorded to the facts that were the basis for the agency decision. Thus, the central inquiry on a motion for summary judgment—whether the movant has proved its case as a matter of fact and law or whether a genuine issue of material fact precludes summary judgment—has no bearing on a review of the administrative record in a bid protest. The inquiry, instead, is whether, given all the disputed and undisputed facts, a protester has met its burden of proof that an award is arbitrary, capricious, and so on, or violates to prejudicial effect an applicable procurement regulation. *See CCL Serv. Corp. v. United States,* 48 Fed.Cl. 113, 119 (2000).

It is important to remember that the administrative record is not a documentary record maintained contemporaneously with the events or actions included in it. Rather, the administrative record is a convenient vehicle for bringing the decision of an administrative body before a reviewing agency or a court. *See CCL Serv.,* 48 Fed.Cl. at 118. Defendant filed a motion to strike, objecting to plaintiff's use of three documents that were not part of the administrative record—the affidavits of Mark Patel, Markrist's Vice President, and Marshall L. Sneiderman, plaintiff's President, as well as information on different mail-sorting voice recognition software. These three documents, while not included in the administrative record, provide information useful for the evaluation of facts and statements contained in the administrative record and therefore have been considered by the court. Defendant is well aware of the abundant precedent allowing supplementation of the administrative record in the circumstances presented here, *see GraphicData, LLC v. United States,* 37 Fed.Cl. 771, 779–80 (1997), so the legal impetus for this motion is a mystery.

2. *Plaintiff's protests: improper award, improper notification, absence of justification*

Plaintiff alleges that the USDA violated federal law and regulations, acted arbitrarily,

and abused its discretion by awarding the procurement to Guilltone, which, plaintiff argues, does not qualify as a small business. *See* Am. Compl. filed Apr. 25, 2001, ¶ 32. In particular, plaintiff charges that the contracting officer abused her discretion by accepting Guilltone's self-certification as a small business without verification "through such means as, by way of example and not of limitation, consulting SBA's PRO–Net database; and by USDA's failing to inquire of [Guilltone], or to institute a Contracting Officer size protest when [plaintiff] brought to the Contracting Officer's attention that [Guilltone's] listing in PRO–Net indicated that it was ineligible for award." Am. Compl. ¶ 35. Plaintiff also charges the contracting officer with abuse of discretion for granting the award prior to notifying the unsuccessful bidders. Finally, violations of FAR §§ 15.101–1, 15.308 are levied against the contracting officer for failing to articulate, or document, any rationale for accepting Guilltone's higher-priced offer in preference to plaintiff's "second-ranked, lower-priced offer." Am. Compl. ¶ 44.

### 1) *The SBA award and reasonable investigation*

■ Plaintiff posits that "[i]t is axiomatic that when a procurement has been set aside for small businesses, statute and regulations provide that award may only be made to small businesses, as defined under the regulations. *See generally* 15 U.S.C. § 637; FAR § 19.501 et seq." Pl.'s Br. filed May 7, 2001, at 4. However, the issue before the court is not whether the contracting officer erred in believing Guilltone to be a small business, but, rather, whether such a belief was reasonable and whether the contracting officer's discretion can be faulted due to her failure to consult PRO–Net.

Plaintiff attempts to impute the contracting officer with constructive knowledge of Guilltone's size, *i.e.*, over the small-business threshold, due to the availability of such information on SBA's PRO–Net. Because of "the ease of use of PRO–Net and of the quality of information it contains, throughout the small-business contracting world PRO–Net has universally become the first place

agency or contractor personnel consult for information about a small-business contractor," plaintiff intones, which is a statement by Mr. Sneiderman. Affidavit of Marshall L. Sneiderman, May 4, 2001, ¶ 10. Although a search on PRO–Net may be in wide practice, it is not a requirement of this procurement.

Significantly, the contracting officer pursued additional avenues of information about the bidders via Dun & Bradstreet, a reputable financial service. The merits of one information resource versus another are not appropriate for debate in this forum. "[C]ontracting officers are 'entitled to exercise discretion upon a broad range of issues confronting them' in the procurement process." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed.Cir.2001) (quoting *Latecoere Int'l, Inc. v. United States Dep't of Navy*, 19 F.3d 1342, 1356 (11th Cir.1994)). The contracting officer's conduct in this regard was neither arbitrary nor capricious, and it was not irrational.

### 2) *Timeliness and content of notification*

■ Plaintiff alleges that it was prejudiced by the timing and content of the mandatory pre- and post-award notifications from the USDA. Prior to the grant of an award, FAR § 15.503(a)(2) requires the contracting officer to give unsuccessful offerors notice of the name and address of the apparently successful offeror. After the grant of an award, the contracting officer is required to send a post-award notice to the unsuccessful offerors containing the name and address of the awardee, as well as the contract price. *See* FAR § 15.503(b). In addition, as plaintiff repeatedly points out, the post-award notification letter that was sent to the offerors identified the awardee as "Guilltone Industries," rather than by its correct name, "Guilltone Properties, Inc." According to plaintiff, the contracting officer's violations of the pre- and post-award notification requirements prejudiced plaintiff by causing its delayed filing of a size protest with the SBA.

Defendant concedes that the contracting officer did not issue a pre-award notice and that the post-award notice contained neither the correct name of the awardee nor the

awardee's bid price. Nonetheless, defendant contends that not one of these violations caused prejudice to plaintiff. Defendant first points out, with respect to pre-award notice, that the applicable regulation contains an "urgency" exception. *See* FAR § 15.503(a)(2)(iii). Second, defendant argues that neither the misappellation nor the missing price information in the post-award notice was prejudicial to plaintiff because, according to defendant, neither piece of information was critical to plaintiff's decision to file a size protest with the SBA. Because the SBA regulations governing the timing of size protests key the timing to the pre-award notice, the deficiency in the post-award notice is not material.

Prejudice is a question of fact in a post-award bid protest. *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057 (Fed.Cir.2000). Plaintiff must show not only that the USDA made significant errors in the procurement process, but that, had the USDA made no errors, "there was a reasonable likelihood that [plaintiff] would have been awarded the contract." *Data General Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed. Cir.1996). The basis for the contracting officer's invocation of the urgency exception is disputed by two affidavits from the incumbent Markrist's Vice President, Mr. Patel. *See supra* note 5. The court has considered his conjectural averments, which, even in the best light, do not call into question the contracting officer's exercise of her judgment that Markrist was not able to provide the number of mail vans that performance required.

The court finds that plaintiff was not prejudiced by the post-award notice's misnomer. As stated above, the timing for initiating a size protest is delimited by award of the contract. 13 C.F.R. § 121.1004(a)(2), and defendant has established the predicate for the

contracting officer's invocation of the urgency exception to eliminate pre-award notice. However, to the extent that post-award notice is relevant, the contracting officer's failure to transpose the correct awardee's name to the post-award letter bespeaks the lack of attention to detail that permeated this solicitation. The error itself could not be deemed prejudicial to plaintiff, as plaintiff did not show that any other entity is called Guilltone.

The contracting officer's string of "minor" violations during the notification process is disturbing to the court, as is the major failure to document her technical and cost trade-off analysis. Although the contracting officer cured the major infraction *post facto*, the overall conduct of the procurement stretches the limits of deference to agency decision-making.

Nevertheless, the court finds that plaintiff was not prejudiced by the contracting officer's violations of the post-award notification,[12] even though plaintiff was denied access to the single arbiter for small business size disputes.[13] *See Allen M. Campbell Co. v. United States*, 199 Ct.Cl. 515, 519–20, 467 F.2d 931, 933 (1972); *Hawpe Constr., Inc. v. United States*, 46 Fed.Cl. 571 (2000), *aff'd*, 10 Fed.Appx. 957, 2001 WL 638450, (Fed.Cir. 2001) (Table).

### 3) *Cost and technical tradeoff analysis*

 Although plaintiff challenges the contracting officer's July 17, 2001 cost and technical tradeoff analysis on a variety of grounds, none of them substantiates that the analysis and its conclusions are arbitrary, capricious, or irrational. The Instructions to Offerors noted that the USDA reserved the right to "reject any or all offers if such action is in the public interest; accept other than the lowest offer; and waive informalities and minor irregularities in offers received."

---

12. The *Administrative Record* shows that the Abstract of Proposals was only included with the January 11, 2001 letter, not the earlier January 4 notification. However, even if it had been (and the letter from the Acting Contracting Officer does not reveal whether any other document was sent), the contracting officer admittedly once again made a mistake in overstating the amount of plaintiff's proposal in the prior correspondence.

13. The *OHA Order Dismissing Appeal* goes on to explain that "the Federal Acquisition Regulation provides that an [SBA] Area Office determination is final unless and until two conditions are satisfied: it is appealed and the Contracting Officer is notified of the appeal before [contract] award. 48 C.F.R. § 19.302(g)(2)." OHA Docket No. SIZ–2001–01–30–01 at 2–3.

Thus, plaintiff must show more than the fact that its bid was lower than Guilltone's. A contracting officer's best value determination is entitled to the same deference whether undertaken during the procurement or in response to litigation. *See Lockheed Missiles & Space Co., Inc. v. Bentsen,* 4 F.3d 955, 958–59 (Fed.Cir.1993). The Federal Circuit's language in *Impresa Construzioni,* 238 F.3d at 1332–33, is instructive on point:

> When a challenge is brought on the [ground that the procurement official's decision lacked a rational basis], the courts have recognized that contracting officers are "entitled to exercise discretion upon a broad range of issues confronting them" in the procurement process. *Latecoere Int'l, Inc. v. United States Dep't of Navy,* 19 F.3d 1342, 1356 (11th Cir.1994). Accordingly, the test for reviewing courts is to determine whether "the contracting agency provided a coherent and reasonable explanation of its exercise of discretion," *id.,* and the "disappointed bidder bears a 'heavy burden' of showing that the award decision 'had no rational basis.'" *Saratoga Dev. Corp. v. United States,* 21 F.3d 445, 456 (D.C.Cir.1994).

### 3. *Other factors*

The court finds that plaintiff has been irreparably harmed, forfeiting the profits that would have flowed from an award; that the balance of hardships weighs in favor of neither plaintiff nor Guilltone; and that the public interest favors affording the protestor strict scrutiny because the conduct of this procurement gave lip service to mandatory regulations. The court has given its most careful attention to all of the grounds argued by plaintiff, but finds them to be without merit.[14]

### CONCLUSION

Accordingly, based on the foregoing,

1. The judgment entered pursuant to the opinion issued on August 13, 2001, is vacated, and the opinion issued this date is substituted therefor. The Clerk of the Court shall enter a new judgment.

2. Defendant's motion for judgment on the administrative record is granted, and plaintiff's cross-motion is denied. The Clerk of the Court shall enter judgment for defendant.

**IT IS SO ORDERED.**

No costs.

14. Because this is an injunctive action and the parties required a prompt decision, it was necessary to hold argument on August 9, 2001, the funeral day of our beloved colleague, Judge Roger B. Andewelt. Judge Andewelt thrived on the intellectual rigor of argument when counsel are fully engaged with the judge, completely prepared, and able to respond to anything thrown their way by the bench or opposing counsel. Such was the argument in this case, and Judge Andewelt would have enjoyed it thoroughly.