*1334 BRYSON, Circuit Judge,
dissenting.
I respectfully dissent based on my disagreement with the portion of the court’s opinion that addresses Monster’s compliance with section 508 of the Rehabilitation Act, 29 U.S.C. § 794d.
Section 508 requires agencies, when procuring electronic and information technology, to consider the needs of individuals with disabilities. Specifically, agencies must provide disabled individuals “access to and use of information and data that is comparable” to the access and use provided to individuals without disabilities. 29 U.S.C. § 794d(a)(l)(A). Such access must be provided unless doing so would impose an “undue burden” on the agency. If an agency determines that providing comparable access would create an undue burden, it can provide an alternative means of access to information for individuals with disabilities. Id. § 794d(a)(l)(B).
Congress delegated rulemaking authority under section 508 to the Architectural and Transportation Barriers Compliance Board, 29 U.S.C. § 794d(a)(2), which promulgated comprehensive regulations known as the Electronic and Information Technology Accessibility Standards, 36 C.F.R. Part 1194. Those standards prescribe specific design criteria for software and websites, requiring keyboard accessibility, id. § 1194.21(a), text equivalents for non-text elements, id. § 1194.22(a), and accessibility of forms, id. §§ 1194.21(i), 1194.22(n). In addition, section 1194.31 of the regulations provides functional performance criteria, including that “[a]t least one mode of operation and information retrieval that does not require user vision shall be provided, or support for assistive technology used by people who are blind or visually impaired shall be provided.” Id. § 1194.31.
Although the majority characterizes the comparable access requirement of section 508 as “flexible,” the regulations, to which we owe deference under Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), require specific modes of compliance, which were not met in Monster’s proposal or in the contracting officer’s response to that proposal. The majority is correct that the prescribed modes of compliance need not be employed if an alternative technology “result[s] in substantially equivalent or greater access to and use of a product for people with disabilities.” 36 C.F.R. § 1194.5. However, nothing in the record indicates that Monster’s product, Employer 5.0, results in “substantially equivalent or greater access” than a product that is fully compliant with section 508, such as Allied’s product.
The main source of flexibility in the regulatory scheme is found in the “undue burden” exception. Section 1194.2(b) of the regulations mandates that “[i]f products are commercially available that meet some but not all of the standards, the agency must procure the product that best meets the standards.” 36 C.F.R. § 1194.2(b). Despite that requirement, an agency can procure a less-compliant product if procuring the most-compliant product would impose an “undue burden,” id. § 1194.2(a)(2), i.e., would impose “significant difficulty or expense,” id. § 1194.4. In order to take advantage of the “undue burden” exception, the agency must “explain why, and to what extent,” compliance would create an undue burden. Id. § 1194.2(a)(2).
In this case, the contracting officer made no attempt to explain why compliance with section 508 would create an undue burden. In fact, the contracting officer did not even recognize that Monster took exceptions to the requirement of compliance with section 508. Before discussing Allied’s exceptions to contract terms, the contracting officer flatly stated “Monster took no exceptions.” He made that *1335 statement even though a portion of Monster’s proposal was clearly labeled “Part 5. Exceptions” and even though that portion of the proposal clearly indicated that Monster’s system, Employer 5.0, was not fully compliant with section 508.
The majority minimizes the importance of that part of Monster’s proposal by noting that Monster separately certified that its proposal was compliant with section 508. Although Monster indicated with a checkbox entry that its proposal complied with the Accessibility Standards, the compliance certification contains a note that reads “See [Monster’s] exceptions in the previous section,” referring to Part 5. That part, in turn, states, “The following represents [Monster’s] exceptions to the Section 508 compliance requirement.” Two exceptions follow. The first states, “Employer 5.0 is generally compliant with exceptions to the relevant Section 508 requirements.” That exception is delineated with a citation to the design requirements in section 1194.22 and the functional performance criteria in section 1194.31. The second exception recognizes the deficiencies in Monster’s submission, noting that “Employer 5.0 has minor compliance exceptions with the accessibility of forms, text equivalents for non-text elements, and keyboard accessibility.”
Those exceptions involve features that are important to making software and websites accessible to individuals with disabilities. Individuals with visual disabilities access websites with screen readers or Braille displays, devices that convert visual text to auditory or tactile information. Without text equivalents for non-text elements, a blind person may be unable to use a website, even if the website contains only what Monster characterizes as “minor exceptions.” For example, if an otherwise compliant website provides a job application form, but the “Submit” button is an image file lacking a text equivalent, a blind person can fill out the entire form yet be unable to submit it because a screen-reading program cannot pronounce the “Submit” button due to the lack of a meaningful text equivalent. Similarly, without keyboard accessibility, a blind person will be unable to use software or websites that require a mouse.
Although the majority accepts Monster’s assertion that its exceptions were “minor,” that characterization has no legal effect, because a product that is “generally compliant with exceptions” is still non-compliant under the regulations. See 36 C.F.R. § 1194.2(a) (requiring products to “comply with all applicable provisions” of the Accessibility Standards). Regardless of how Monster chose to describe the degree of its deviation from the Accessibility Standards, it is clear that Employer 5.0 does not fully comply with those Standards.
Because Monster’s product was not fully compliant with the applicable section 508 requirements and because a fully compliant product (such as Allied’s product) was “available in the commercial marketplace,” id. § 1194.2(b), a straightforward application of the regulations would require that the contracting officer not award the contract to Monster without making further findings. In particular, an award to Monster could be justified if the contracting officer made an “undue burden” determination and provided the required explanation for that determination by explaining that selecting a more compliant product would impose “significant difficulty or expense.” Id. §§ 1194.2(a)(2), 1194.4. Yet despite Monster’s clear statement that it was taking exceptions to the section 508 compliance requirement, the contracting officer did not acknowledge that Monster’s proposal was not fully compliant with the requirements of section 508. For that reason, the contracting officer did not conduct the requisite analysis of the “significant difficulty or expense” that would be im *1336 posed by selecting a fully compliant product, nor did the contracting officer provide the requisite explanation of why and to what extent insisting on a fully compliant product would impose an undue burden on the agency.
To remedy the regulatory violation, I would remand this case to give the agency an opportunity to conduct an “undue burden” analysis and, if it found the “undue burden” standard satisfied, to explain why, and to what extent, compliance would impose an undue burden on the agency as that term is defined in the Accessibility Standards. That determination would, of course, be subject to further review. See, e.g., Lockheed Missiles & Space Co. v. Bentsen, 4 F.3d 955, 959-60 (Fed.Cir.1993) (evaluating a price/technical tradeoff analysis developed on remand from a decision granting bid protests). Because that mandatory process was not followed in this case, I would not uphold the award to Monster on the present record.