WRS INFRASTRUCTURE
& ENVIRONMENT,
INC., Plaintiff,

v.

The UNITED STATES, Defendant,

and

Environmental Restoration, LCC,
Defendant–Intervenor.

No. 08–613C.

United States Court of Federal Claims.

Filed Under Seal: Dec. 18, 2008.

Filed For Publication with Redactions:
Jan. 30, 2009.

Pamela J. Mazza, Piliero Mazza PLLC, Washington, D.C., Jonathan T. Williams and Isaias "Cy" Alba, of Counsel, for Plaintiff.

Robert Bigler, Trial Attorney, with whom were Gregory G. Katsas, Assistant Attorney General, Jeanne E. Davidson, Director, Donald E. Kinner, Assistant Director, National Courts Section, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C. and Jonathan S. Baker, Office of General Counsel, Civil Rights and Finance Law Office, Environmental Protection Agency, of Counsel, for Defendant.

Richard Lieberman, McCarthy, Sweeney & Harkaway, P.C., Washington, D.C., for Defendant–Intervenor.

## OPINION AND ORDER

SMITH, Judge.

Plaintiff, WRS Infrastructure and Environment, Inc. (WRS) is before this Court protesting the size determination made by the Small Business Association's (SBA) Office of Hearings and Appeals (OHA) that found that WRS did not qualify as a small business for the purposes of a solicitation issued by the U.S. Environmental Protection Agency (EPA).

Plaintiff has filed a Motion for Judgment on the Administrative Record and Defendant has filed its Opposition and Cross–Motion for

Judgment on the Complaint and Administrative Record. After full briefing and oral argument and for the reasons set forth below, the Court hereby **GRANTS** Defendant's Motion.

## HISTORY AND FACTS

### A. The Procurement and Award

On September 25, 2007, the EPA issued RFP No. PR–R5–07–100098 (RFP) which solicited offers to provide emergency and rapid response services in support of EPA Regions 5's hazardous waste removal program. AR 597–897. The Contracting Officer (CO) issued the solicitation as a small business set-aside and designated North American Industry Classification System (NAICS) code 562910, Environmental Remediation Services, with a 500 employee standard. Offers were due on October 29, 2007, and on that date WRS submitted its offer and self-certified as a small business. AR 303. WRS was awarded the contract and on July 8, 2008, the CO informed the unsuccessful offerors that the award was made to WRS. AR 910.

### B. The Size Protest

On July 16, 2008, Environmental Restorations, Inc. (ER) protested WRS's size as of October 29, 2007, claiming that WRS was not a small business when WRS submitted its offer because WRS has more than 500 employees. AR 33. The CO provided ER's protest to SBA's Office of Government Contracting, Area II (Area Office), on August 4, 2008. *Id.* On August 25, 2008, the Area Office issued its size determination determining that WRS was other than small for the purposes of the procurement basing its decision on the Letter of Intent (LOI) between WRS Holding Company (the Holding Company) and Compass Environmental, Inc. (Compass). WRS appealed this decision to OHA. AR 303–08. On October 1, 2008, OHA issued its decision holding that the Area Office had committed no material error of fact or law in its size determination.

### C. WRS and the Letter of Intent

WRS is one hundred percent owned by the Holding Company. On September 21, 2007,

Holding Company confirmed in a LOI its intent to purchase all of the capital stock of Compass. The LOI states:

> [Redacted], our colleagues and I have greatly enjoyed working with the Compass management team to learn about Compass Environmental, Inc.("Compass") and its opportunities. Based on the review we have completed over the past several weeks and our discussions to date, WRS Holding Company is pleased to confirm its intent to purchase, directly or through an affiliate (in either case, "Buyer"), all of the capital stock of Compass, on the terms and subject to the conditions set forth in this letter.
>
> 1) *Stock Purchase.* At the closing, Buyer would purchase all of the issued and outstanding shares of capital stock of Compass (the "Shares"), from all of the holders of the Shares, free and clear of all lines.
>
> 2) *Purchase Price.* The aggregate purchase price for the Shares would be [Redacted], which is equal to approximately [Redacted] times Compass' estimate of 2007 EBITDA, as adjusted to eliminate certain non-recurring costs. The purchase price would be decreased dollar-for-dollar to the extent net working capital at closing is less than [Redacted]. Subject to the escrow described below, the purchase price would be payable in cash at closing....
>
> 3) *Escrow and Special Circumstances.*
>
> (a) At closing, [Redacted] of the purchase price would be placed in a third party escrow, in lieu of payment to the selling shareholders, to secure payment of any indemnification obligations the selling shareholders may have under the definitive stock purchase agreement....

AR 472.

The LOI continues with several more paragraphs including a "Confirmatory Due Diligence" provision which states that "[c]ommencing immediately after the execution of this letter, Buyer shall be entitled to complete its confirmatory due diligence investigation of Compass...." AR 474. The LOI also includes a provision entitled "Definitive Stock Purchase Agreement" which provides that:

Promptly after the execution of this letter, and contemporaneously with Buyer's conduct of its confirmatory due diligence investigation ... Buyer shall prepare the initial drafts of a definitive stock purchase agreement and any necessary ancillary transaction documents, containing provisions consistent with the terms set forth herein and other customary terms, conditions, covenants, indemnities, warranties and representations for a transaction of this type and size. The parties anticipate the following target dates: (i) the delivery of the draft stock purchase agreement shall be delivered by Buyer to Compass on or before September 21, 2007, (ii) completion of the primary due diligence (not including the Post–Execution Due Diligence), execution of the definitive purchase agreement and filing of notifications under the Hart–Scott–Rodino Antitrust Improvement Act of 1976 ("HSR") on or before October 22, 2007, and (iii) subject to the next sentence, the closing would occur on or before November 9, 2007, to be effective as of October 31, 2007. . . .

AR 474–75.

On November 19, 2007, the Holding Company finalized the Stock Purchase Agreement and merged with Compass. AR 1362–1937.

## D. The Protest

On September 3, 2008, Plaintiff filed its protest in this Court. After the decision by OHA, Plaintiff filed its Motion for Summary Judgment on the Administrative Record and on November 21, 2008 Defendant filed its Opposition and Cross–Motion for Judgment on the Complaint and Administrative Record. Oral argument was held on December 9, 2008 and this opinion follows.

## DISCUSSION

### A. Standard of Review

#### 1. Review of an Agency's Procurement Decision

In reviewing an agency's decision in a bid protest, this Court uses the standards set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706 (2006). *Arch Chems., Inc. v. United States,* 64 Fed.Cl. 380, 384–85 (2005). Thus, a protestor must show that the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

To determine whether the agency's decision was one that was arbitrary and capricious, the Court must review whether a rational basis for the agency's decision was lacking or a violation of an applicable regulation or procedure occurred during the procurement process. *Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d 1324,1333 (Fed.Cir.2001). When a challenge is brought based on a violation of regulation or procedure, the plaintiff must show a clear and prejudicial violation of applicable statutes or regulations. *Banknote Corp. of Am., Inc. v. United States,* 365 F.3d 1345, 1351 (Fed.Cir.2004). Furthermore, "[d]eference must be afforded to an agency's ... procurement decisions if they have a rational basis and do not violate applicable law or regulations." *M.W. Kellogg Co. v. United States,* 10 Cl.Ct. 17, 23 (1986).

#### 2. Rule 52.1 Standards

Under RCFC 52.1 this Court reviews an agency's procurement decision to determine whether the decision is supported by the already-existing administrative record. Unlike a Rule 56 motion, "proceeding under RCFC [52.1] merely restricts the evidence to the agency record. . . ." *Bannum, Inc. v. United States,* 404 F.3d 1346, 1356 (Fed.Cir. 2005). "Thus, the central inquiry on a motion for summary judgment—whether the movant has proved its case as a matter of fact and law or whether a genuine issue of material fact precludes summary judgment-has no bearing on a review of the administrative record. . . ." *Tech Systems, Inc. v. United States,* 50 Fed.Cl. 216, 222 (2001).

Unlike a motion for summary judgment, the question of whether an issue of material fact is disputed has no bearing upon a review of the administrative record in a record review case, such as a bid protest. The inquiry, instead, is whether, given all the disputed and undisputed facts, the plaintiff has met its

burden of proof that the contracting officer's decision was arbitrary, capricious, or contrary to law. *Id.* (citing *CCL Serv. Corp. v. United States,* 48 Fed.Cl. 113, 119 (2000)). In reviewing the agency's action under this narrow, deferential standard, "the focal point for judicial review should be the administrative record already in existence, not some record made initially by the reviewing court." *Florida Power & Light v. Lorion,* 470 U.S. 729, 743–44, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985) (quoting *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973)).

## B. Size Determination Regulations

When determining the size of an organization, SBA regulations consider, among other things, whether agreements to merge and agreements in principle to merge should be given present effect. With regard to size determinations, the relevant SBA regulations state:

> (1) In determining size, SBA considers stock option convertible securities, and agreements to merge (including agreements in principle) to have present effect on the power to control a concern. SBA treats such options, convertible securities, and agreements as though the rights granted have been exercised.
>
> (2) Agreements to open or continue negotiations towards the possibility of a merger or a sale of stock at some later date are not considered agreement in principle and thus not given present effect.
>
> (3) Options, convertible securities, and agreements that are subject to conditions precedent which are incapable of fulfillment, speculative, conjectural or unenforceable under state or Federal law, or to where the probability of the transaction (or exercise of the rights) occurring is shown to be extremely remote, are not given present effect.

13 C.F.R. 103 § 121.103(d). These regulations state that both agreements to merge and agreements in principle are deemed to have present effect on the power to control the concern.

## C. The Letter of Intent is an Agreement In Principle and Properly Given Present Effect

Plaintiff asserts that the SBA incorrectly held that the LOI between the Holding Company and Compass is an agreement in principle because paragraph 8 of the LOI is titled "Non-binding Agreement." On the other hand, Defendant states that this is simply incorrect and that the agency properly concluded that the LOI should be given present effect under 13 C.F.R. 103 § 121.103(d). This case, therefore, turns on whether the agency's decision that the LOI is an agreement in principle was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. The Court must, therefore, examine the LOI together with the SBA's own regulations.

SBA regulations are clear when determining size. Specifically, "[i]n determining size, SBA considers agreements to merge (including agreements in principle) to have present effect on the power to control a concern." 13 C.F.R. 103 § 121.103(d)(1). Where there is supporting evidence to show that serious negotiations between the parties have occurred, letters of intent and similar documents will be given present effect; while where such negotiations have not occurred, present effect will not be given by OHA. *Size Appeal of PCCI, Inc.,* SBA 4531(2003). In reviewing the LOI in this case, it is clear to the Court that on its face the LOI indicates that substantial negotiations had already been held, that partial due diligence had already been performed between buyer and seller, and that WRS intended to purchase Compass. The Court agrees that the LOI is an agreement in principle as it was reached after negotiations and due diligence, and represented an agreement to merge as well as providing specific price terms and conditions that were to be included in the closing documents.

At the time WRS submitted its bid, on October 29, 2007, it certified that it was a small business as a formal merger had not yet occurred between WRS and Compass. It was not until November 19, 2008 that WRS and Compass formally merged. WRS argues that because the merger had not yet been

executed, the LOI could not be considered an agreement in principle nor could it be considered "affiliated with Compass" because there was still the possibility that the merger might not go through. Therefore, it is WRS's contention that at the time it submitted the bid, it was still a small business. However, even though the actual merger had not been executed as of the date of the LOI, this will not automatically preclude the agency from concluding that an LOI is an agreement in principle and be given its present effect. Instead "a firm becomes affiliated with another when it reaches an agreement in principle to acquire the other by the date of self certification, even if the merger or acquisition has yet to be executed." *See Size Appeal of Geosyntec Consultant,* SBA No. 4277 (1997). In addition, "a firm is not considered affiliated with another firm merely by virtue of negotiations toward one possibly acquiring the other. Rather, a firm becomes affiliated with another when it reaches an agreement in principle to acquire the other by the date of self certification, even if the merger or acquisition has yet to be executed." *Id.* Thus, if an agreement is looking to negotiate a possible future merger or acquisition, this agreement would not rise to the level of an agreement in principle. *Id., See also Size Appeal of Technology Systems Association, Inc.,* SBA No. 3963 (1994).

■ The record shows that the LOI dated September 21, 2007 is an agreement in principle and not an agreement to continue negotiations. First, the LOI is signed by both the president of WRS Holding Company, and the representative of Compass and The Edgewater Funds. The joint signatures show the intent of the parties to fulfill the terms of the LOI. Second, the letter specifically states that "based on the review we have completed over the past several weeks and our discussions to date, WRS Holding Company is pleased to confirm its intent to purchase ... all of the capital stock of Compass." AR 472. It is clear that the negotiations took place prior to the LOI and that, therefore, the LOI is not an agreement to conduct further discussions or an agreement to open negotiations. *See* 13 C.F.R. 103 § 121.103(d)(2). Even though the Plaintiffs argue that some negotiations took place after this letter, the

LOI set forth the essential terms of an agreement. The additional negotiations related to the "confirmatory due diligence" which is normal; as it is addressed in paragraph 4(a) which states "Buyer shall be entitled to complete its due diligence investigation of Compass." AR 474. Thus, some due diligence had already been performed and affirms the Holding Company's intent to purchase Compass prior to the certification that WRS was a small business. Third, the LOI set forth the exact purchase price and its intent to purchase all of the outstanding shares of stock. Lastly, the LOI set forth several other specific transactional dates and amounts, clearly indicating an intent by WRS to purchase Compass.

Plaintiff argues that paragraph 8 of the LOI states that it is a "non-binding agreement" and, therefore, the LOI cannot possibly be considered an agreement in principle. Plaintiff further argues that the agreement must create legal rights. However, if this were true, it would always be possible for large companies to evade the rule by inserting language that the agreement created no rights. This interpretation would make this rule almost meaningless. The regulations do not specify that the agreement be binding, the regulations only provide what to consider in making the size determination. Therefore, the agency's interpretation of the agreement in principle is a reasonable approach, otherwise it would create a rule that is so vague it is useless or so easy to evade that it would serve no purpose. Here, at the time the LOI was signed, it is clear to the Court that the Holding Company had every intention of merging with Compass. Further, in balancing all of the other enumerated provisions in the LOI against the non-binding paragraph, it is clear to the Court that the LOI is an agreement in principle to purchase Compass and should, therefore be given the effect attributed to it by the agency.

## CONCLUSION

The Court finds that the agency's decision that LOI is an agreement in principle and given its present effect was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, 5 U.S.C.

§ 706(2)(A) and, therefore, **GRANTS** Defendant's Motion for Judgment on the Complaint and Administrative Record.

**It is so Ordered.**